**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**No 3:21-cv-455-MOC-DCK**

| | |
|---|---|
| XYAVIER CALLISTE, | |
| Plaintiff, | |
| v. | **FIRST AMENDED** |
| | **COMPLAINT** |
| THE CITY OF CHARLOTTE; Officer XENG LOR, in his individual capacity; Officer Dave Osorio, in his individual capacity, | **(Jury Trial Demanded)** |
| Defendants. | |

NOW COMES Plaintiff, demanding a jury trial and alleging the following against the

Defendants:

## INTRODUCTION

On July 31, 2018, Defendant Officer Xeng Lor (hereinafter, "Officer Lor") blatantly

disregarded national guiding principles on shooting into moving vehicles and local policies

related to the use of deadly force by shooting into a moving vehicle driven by Plaintiff Xyavier

Calliste (hereinafter, "Mr. Calliste").  Police suspected that Mr. Calliste was trespassing in the

employee-designated parking garage at Charlotte Douglas International Airport. While exiting

the restricted parking garage and driving at a modest speed, Mr. Calliste was met with deadly

force. As Mr. Calliste drove past, Officer Lor fired two shots at Mr. Calliste. The first shot

entered Mr. Calliste's vehicle from the side. The second shot entered Mr. Calliste's vehicle from

behind. Both shots struck Mr. Calliste.

At the time of the shooting, Officer Lor suspected Mr. Calliste only of a minor offense, and he had no reason to suspect that Mr. Calliste was violent. After making his own way to a local hospital for treatment, CMPD officers arrived at the hospital, confining Mr. Calliste to his bed while he healed. Mr. Calliste was later charged with trespass and assault with a deadly weapon. All criminal charges against Mr. Calliste were dismissed several months later.

Despite the dismissal of all charges, Mr. Calliste suffered and continues to suffer from his injuries and trauma. Plaintiff brings this action for compensatory damages and punitive damages pursuant to 42 USC §§ 1983 and 1988, the Fourth Amendment, and under North Carolina law.

## PARTIES

1. Plaintiff Xyavier Calliste is a resident of Dallas County, Texas.

2. Defendant City of Charlotte (the "City") is a municipal corporation organized under Chapter 160A of the North Carolina General Statutes. It maintains and operates the Charlotte Mecklenburg Police Department ("CMPD"). The City of Charlotte bears legal responsibility for the intentional torts and negligent acts of CMPD officers in the course of their employment. The City is responsible for the appointment, training, supervision, promotion, and discipline of police officers and supervisory police officers, including the individually named defendants herein.

3. Defendant City of Charlotte, at the time of the incidents giving rise to this action, had waived governmental or sovereign immunity from state law tort claims up to a certain dollar amount, pursuant to GS § 160A-485, either by participation in a government risk pool or through purchase of commercial insurance.

2

4. Additionally, Defendant City of Charlotte, at the time of the incidents giving rise to this action, waived governmental or sovereign immunity by operation of Section 2-3 of its Code of Ordinances.

5. At all times relevant hereto, Officer Lor acted under color of state law.

6. Defendant Officer Lor is sued in his individual capacity as to all federal and state law claims.

7. At all times relevant to this Complaint, Officer Lor acted as an agent and was screened, hired, trained, supervised, and employed by Defendant City of Charlotte as a police officer empowered to perform law enforcement duties on behalf of the City of Charlotte.

8. Defendant Officer Dave Osorio (hereafter "Officer Osorio") was employed as a detective with the Charlotte-Mecklenburg Police Department in July and August 2018.

9. Officer Osorio acted under the color of state law during all relevant times.

10. Officer Osorio is sued in his individual capacity as to all federal and state law claims.

11. At all times relevant to this Complaint, Officer Osorio acted as an agent and was screened, hired, trained, supervised, and employed by Defendant City of Charlotte as a police officer empowered to perform law enforcement duties on behalf of the City of Charlotte.

## JURISDICTION AND STATUTE OF LIMITATIONS

12. This court has subject-matter jurisdiction under 42 U.S.C. §§ 1983, 1343; 28 U.S.C. § 1331; and the Fourth Amendment.

13. Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over all state law claims because each state law claim arose out of the same set of facts and is so related to the federal law claims that it forms part of the same case or controversy.

14. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to this action occurred in the Western District of North Carolina.

3

15. On November 18, 2021, Plaintiff files this First Amended Complaint, in part, in order to change Defendant parties or the naming of Defendant parties.

16. Specifically, Plaintiff files this First Amended Complaint in order to change the previous Defendant Charlotte-Mecklenburg Police Department for the current Defendant Dave Osorio, as to Plaintiff's Counts II, IV, and VI.

17. Upon information and belief, Officer Osorio knew of the existence of this lawsuit shortly after the filing of the original complaint in August 2021.

18. The causes of action for Section 1983 malicious prosecution and state-law malicious prosecution began to accrue when the relevant criminal prosecution against Plaintiff was resolved in Plaintiff's favor in January 2019.

## FACTS

### A Suspicious Vehicle is Reported

19. On the evening of July 31, 2018, Mr. Calliste drove his car to the Charlotte Douglas International Airport.

20. Mr. Calliste drove his vehicle into a parking garage that was designated specifically for airport employees. Mr. Calliste was not an employee of the airport or of any business located at the airport.

21. At approximately 9:30 pm on July 31, 2018, CMPD police officers received a report of a suspicious vehicle driving inside the employee-designated airport parking garage located on Wilkinson Boulevard. A parking garage worker told dispatchers that a suspicious vehicle followed an authorized car into the parking area.

22. Other than the minor offense of trespassing, the driver of the suspicious vehicle was not suspected of committing any crime inside the parking area.

4

23. Upon information and belief, the call reporting the suspicious vehicle did not convey concerns about the vehicle containing a weapon.

24. Upon information and belief, the call reporting the suspicious vehicle did not convey concerns about a felony or violent crime.

**Officer Lor Responds to the Scene**

25. Officer Lor has been employed by CMPD since January 5th, 2009. Officer Lor was assigned to the Airport Division.

26. Officer Lor was the first officer to respond to the scene.

27. Officer Lor was investigating a misdemeanor offense.

28. Officer Lor was able to identify the vehicle matching the description – a black Dodge car.

29. Upon locating the black Dodge, Officer Lor did not obtain the license plate number.

30. The black Dodge car that matched the description was driven by Mr. Calliste.

31. Upon information and belief, Officer Lor did not speak with Mr. Calliste.

32. Officer Lor attempted to cut off Mr. Calliste's exit by parking his police vehicle in such a position that would impede the flow of vehicles seeking to exit the parking garage.

33. To this end, Officer Lor initiated a traffic stop of a black Hyundai. Mr. Calliste was driving immediately behind the black Hyundai as he began his exit.

34. The airport exit was a one-lane exit route with grass located to the right side.

35. Officer Lor stopped the Hyundai by stepping out of his police vehicle, standing in the middle of the exit ramp, and extending his hand. Officer Lor successfully stopped the black Hyundai.

36. Officer Lor, at the time of the stop, was positioned in front of the Hyundai, facing the front windshield of the car. Officer Lor was positioned centrally to the Hyundai.

37. From where Officer Lor stood at the moment of stopping the Hyundai, there was roughly an equal distance to either the driver's or passenger's side of the Hyundai.

38. With the black Hyundai stopped in front of him, Mr. Calliste attempted to leave the scene by driving his vehicle off the pavement and onto the grassy area. In this manner, Mr. Calliste's vehicle maneuvered to the right of the Hyundai.

39. Mr. Calliste's vehicle did not make any contact with the vehicle in front of it.

**Officer Lor Shoots Mr. Calliste**

40. As Mr. Calliste maneuvered his vehicle around the passenger side of the Hyundai, Officer Lor shouted twice, "get out of the car."

41. Officer Lor gave his verbal commands while Mr. Calliste's vehicle and the Hyundai were side-by-side, with the Hyundai stopped on the pavement and Mr. Calliste's vehicle traveling in the grassy area adjacent to the pavement.

42. Mr. Calliste turned his vehicle away from Officer Lor and the Hyundai.

43. As the Dodge drove through the grass, and before Officer Lor fired his weapon, a large space can be seen between Officer Lor and the car driven by Mr. Calliste.

44. Despite the large gap, within two seconds of giving verbal commands, Officer Lor fired his weapon twice.

45. Officer Lor fired his weapon twice at a moving vehicle.

46. Officer Lor fired his weapon twice into the driver's side window as Mr. Calliste drove past him.

47. Officer Lor's first shot was fired as Mr. Calliste's vehicle was next to Officer Lor. At the time of the first shot, the front end of Mr. Calliste's vehicle had already passed by Officer Lor.

6

48. Officer Lor's second shot was fired after Mr. Calliste's vehicle had already passed by. In other words, Officer Lor's second shot entered Mr. Calliste's vehicle from behind.

49. Mr. Calliste was struck by two bullets. Those two bullets caused three distinct injuries.

50. Mr. Calliste did not stop his car at that time but continued to exit the airport.

51. Upon information and belief, the purpose for Officer Lor firing his weapon was to stop a fleeing suspect who was believed to have committed a mere misdemeanor offense.

52. As Mr. Calliste's vehicle passed by and away from Officer Lor, it was unreasonable for Officer Lor to believe he was in peril.

53. Mr. Calliste did not use deadly force against Officer Lor.

54. Mr. Calliste did not threaten the use of deadly force against Officer Lor.

55. At the time that Officer Lor fired two shots, there were no civilian pedestrians in the path of Mr. Calliste's moving vehicle.

56. As the body cam shows, Officer Lor positioned himself closer toward the path of the oncoming car and did not take reasonable steps to move out the way of Mr. Calliste's vehicle.

57. Mr. Calliste, while exiting the parking area, did not drive at excessively fast speeds.

58. Mr. Calliste, while exiting the parking area, did not drive the car toward Officer Lor or any other person.

59. Mr. Calliste was not armed and was not suspected of being armed.

60. At no time prior to the incident did Mr. Calliste demonstrate that he either was willing to injure an officer that got in the way of escape or was willing to persist in extremely reckless behavior.

61. The driver of the Hyundai was not in danger of being injured by Mr. Calliste.

7

62. Officer Lor was not in danger of being injured by Mr. Calliste.

63. Officer Lor fired the first shot after the front bumper of Mr. Calliste's car had already passed by the vicinity where Officer Lor had been standing, suggesting that any perceived threat had already passed.

64. Officer Lor fired the second shot after the full length of Mr. Calliste's car had already traveled past the vicinity where Mr. Lor had been standing.

65. Officer Lor did not take reasonable steps to move further away from the likely trajectory of travel of Mr. Calliste's vehicle.

66. Officer Lor's body worn camera shows he moved closer to Mr. Calliste's oncoming vehicle, with his weapon drawn, during the seconds leading up to his decision to fire his weapon.

67. Against policy, Officer Lor placed himself in danger and later used force in an attempt to justify such use of force. Officer Lor stepped closer toward what he evidently perceived to be the zone of danger.

68. After the above-described incident, spokespersons for the City of Charlotte said that police had suspected Mr. Calliste of contributing to a recent string of car break-ins at the airport, with suspects typically sneaking into parking areas in a manner similar to how Mr. Calliste was believed to have snuck into the employee-restricted parking garage. However, a day after the incident, police spokespersons could not state affirmatively Mr. Calliste's business at the airport.[1]

69. Kerr Putney, former Police Chief for CMPD, stated, "We just know that is the [modus operandi] and the employee was wise enough to alert us when he experienced it, and our

---

[1] https://www.wbtv.com/story/38783264/police-officer-shoots-at-driver-attempting-to-run-him-over-at-clt-airport/

officers tried to investigate, and that's when one of the officers felt his life was in danger and fired rounds to prevent being injured."[2]

70. Mr. Calliste was not a person who had committed a violent crime, nor was there any reason to believe he would do so if permitted to escape.

**CMPD Policy on Use of Deadly Force**

71. The CMPD Use of Deadly Force Policy 600-18(C)(2) states, in relevant part, that an officer shall not discharge a firearm:

> *At or from a moving vehicle, unless deadly force is being used against the officer or another person and the officer reasonably believes that no other option is reasonably available. Discharging a firearm in this circumstance is never authorized when it is reasonable to believe that the vehicle may contain an innocent passenger or it is reasonably apparent that the vehicle may careen out of control and injure an innocent bystander. When confronted with an oncoming vehicle, an officer will not position him or herself into the path of the vehicle, but will take all reasonable steps to move out of the way.*

72. Pursuant to CMPD policy, specifically the Use of Force Continuum 600-020, with regard to level of force and level of resistance, an officer should not use deadly force unless the suspect is engaged in aggravated active aggression.

73. CMPD policy, specifically the Use of Force Continuum 600-020, defines aggravated active aggression as "actions that are likely to result in the death or serious bodily injury to an officer" such as "discharge of a firearm, use of a blunt or bladed weapon, and extreme physical force."

74. CMPD Policy 600-018(C)(3) states that an officer will not discharge their firearm "in connection with an investigation or arrest for a misdemeanor offense, when there is no imminent threat of death or serious injury to either the officer or another person."

---

[2] Id.

75. CMPD Policy 600-018(C)(4) states that an officer will not discharge their firearm "to stop or detain an individual based on reasonable suspicion that the individual is involved in criminal activity, when there is no imminent threat of death or serious injury to either the officer, another person, or themselves."

76. The Charlotte-Mecklenburg Office of the Police Attorney occasionally publishes what it refers to as "law bulletins." These bulletins are intended to keep sworn police officers informed on the developments in the law as it relates to their job functions. In the June-July 2005 edition of the published bulletin, the authors from the Office of the Police Attorney reminded CMPD officers that local policy required officers confronted with an oncoming vehicle to "not position him or herself into the path of the vehicle, but will take all reasonable steps to move out of the way." The bulletin also reminded CMPD officers that local policy "forbids officers from discharging his or her firearm at or from a moving vehicle unless no other option is reasonably available and deadly force is justified."

77. In the same June-July 2005 bulletin, the Office of the Police Attorney also included a practical point for its officers. The authors of the bulletin believed that a recent Fourth Circuit decision – *Waterman* – had changed the contours of the Fourth Amendment with regard to firing at moving vehicles. The authors wrote:

> The Waterman case has now put law enforcement officers on notice that shots fired from behind under the circumstances illustrated in the Waterman case are unconstitutional. Officers in future cases will not receive qualified immunity for similar force under similar circumstances.

78. Upon information and belief, the *Waterman* case and the June-July 2005 bulletin was written and provided to CMPD officers, prior to when Officer Lor joined the force.

10

**Calliste is Arrested, an Arrest Warrant is Obtained, and Charges are Dismissed**

79. Mr. Calliste, on July 31, 2018, sought treatment at the hospital for his gunshot wounds.

80. Per hospital policy, the CMPD was called because of the gunshot wounds.

81. Upon information and belief, CMPD officers located Mr. Calliste at the local hospital during the early morning hours of August 1, 2018. Although Mr. Calliste was still recovering at the hospital from his gunshot wounds, he was arrested by CMPD officers while still inside the hospital.

82. Later in the day on August 1, 2018, Officer Osorio sought an arrest warrant from a magistrate for assault with a deadly weapon on a government officer, in violation of NC GEN STAT § 14-34.2. Officer Osorio sought this arrest warrant because CMPD took the position that Mr. Calliste may have intended to strike Officer Lor with his vehicle during the moments when Mr. Calliste pulled his vehicle up onto the grassy area.

83. At the time that Officer Osorio sought to obtain the above-described arrest warrant, Officer Osorio knew that Mr. Calliste was at a nearby hospital and knew how to locate him.

84. Despite knowing where to find Mr. Calliste, Officer Osorio sought the arrest warrant without first speaking with Mr. Calliste.

85. Officer Osorio swore out an affidavit, under oath, attesting that there existed probable cause to believe that Mr. Calliste assaulted Officer Lor with a deadly weapon on July 31, 2018, by "accelerating and driving [a motor vehicle] towards the officer."

86. Officer Osorio reviewed footage from Officer Lor's body-worn camera prior to preparing an application for an arrest warrant.

87. Footage from Officer Lor's body-worn camera does not substantiate Officer Osorio's assertion that Mr. Calliste was "accelerating and driving towards the officer."

11

88. At the time that Officer Osorio sought the above-described arrest warrant, Officer Osorio had seen footage of Officer Lor's body-worn camera, which depicts Officer Lor intentionally placing himself closer to the line of travel of Mr. Calliste's moving vehicle in the seconds before Defendant Lor reported feeling that his life was in danger from said vehicle.

89. At the time that Officer Osorio sought the above-described arrest warrant, Officer Osorio possessed reliable evidence suggesting that Mr. Calliste's evasive driving maneuver was for the purpose of evading police – not for the purpose of causing harm to police.

90. At the time that Officer Osorio sought the above-described arrest warrant, Officer Osorio had seen footage of Officer Lor's body-worn camera, which shows that Mr. Calliste's vehicle passed by Officer Lor at a path of travel at least two yards from where Officer Lor was standing.

91. Relying on the information provided by Officer Osorio, a Mecklenburg County Magistrate issued an arrest warrant for Mr. Calliste.

92. Officer Osorio initiated the criminal prosecution by applying for an arrest warrant from a magistrate and averring specific facts upon which the magistrate relied.

93. But for Officer Osorio's false representations, an arrest warrant would not have been issued, and there would have been no subsequent criminal prosecution for assault with a deadly weapon.

94. As a result of Officer Osorio's acts, Mr. Calliste was detained in jail for more than two weeks.

95. But for the felony charge of assault with a deadly weapon on an officer, Mr. Calliste would have been cited and released for the lesser misdemeanor charge of second-degree trespass, a

12

Class 2 Misdemeanor. A Class 2 Misdemeanor is the second-lowest offense class for misdemeanor offenses.

96. Typically, a criminal defendant in Mr. Calliste's position and with Mr. Calliste's criminal history would be sentenced to no more than a fine upon being convicted of a Class 2 misdemeanor.

97. Upon information and belief, had the court found Mr. Calliste guilty for the misdemeanor offense of second-degree trespass, the most severe sentence disposition a court could have chosen to impose is sixty (60) days of active time in jail or prison.

98. Upon information and belief, Mr. Calliste was jailed as a pre-trial detainee for 19 days. Mr. Calliste's 19 days in confinement does not include time spent in the hospital for the injuries he sustained as a result of Defendant Lor's actions.

99. Upon information and belief, Mr. Calliste served almost half the amount of days in jail, as a pre-trial detainee, in a similar fashion to a defendant found guilty who also had at least five (5) or more prior convictions. In other words, Officer Osorio's actions were a but-for cause of Mr. Calliste spending unnecessary days behind bars.

100.   Upon information and belief, Mr. Calliste was handcuffed to his hospital bed for approximately 2 days before he was transferred to jail.

101.   Mr. Calliste was discharged from the hospital on August 2, 2018. The same day, CMPD placed Mr. Calliste in the custody of the Mecklenburg County Sheriff Office ("MCSO").

102.   Mr. Calliste was a pre-trial detainee in the custody of MCSO from August 2, 2018, to August 22, 2018.

103.   On January 30, 2019, all charges against Mr. Calliste were dismissed by the Mecklenburg County District Attorney's Office.

13

## INJURIES AND DAMAGES

104.    This action seeks damages on behalf of Plaintiff for the loss of liberty, extraordinary

emotional pain, and suffering, and injuries suffered as a consequence of Defendants'

wrongful actions.

105.    Prior to the date of the incident, on July 31, 2018, Mr. Calliste did not have any pertinent

past medical history, nor did Mr. Calliste have pre-existing chronic conditions.

106.    Officer Lor caused damages via gunshot wound to Mr. Calliste's left chest wall, left

posterior arm, and right wrist. The most notable of these damages is the gunshot wound to

the right upper extremity, which caused damage to the ulnar nerve and artery.

107.    Mr. Calliste's injuries will have a lasting effect, including but not limited to neuropathy

(pain from the damaged nerve), chronic pain, partial paralysis (partial loss of sensory/motor

function) to the 4th/5th digits and hand, difficulty gripping/pinching, cosmetic deformity in

the form of scars and unpleasant hand gestures, and infection.

108.    Mr. Calliste sustained gunshot wounds to the right wrist, upper left arm, and left chest

area.

109.    To date, Mr. Calliste has retained bullet fragments in his right wrist and right palm.

110.    The bullet fragments retained by Mr. Calliste caused tissue damage.

111.    The actions of Officer Lor made activities of daily living very difficult for Mr. Calliste,

as gripping and pinching are necessary for most daily tasks.

112.    Mr. Calliste's injuries were severe enough to require an overnight stay in the hospital.

113.    Mr. Calliste was not able to lift more than ten pounds for at least four weeks.

114.    Mr. Calliste had physical limitations resulting from the actions of Officer Lor that

prevented him from playing with his young child.

14

115.    Mr. Calliste had to wear a cast on his right wrist. The cast caused discomfort, and Mr. Calliste received additional treatment for cast discomfort.

116.    Mr. Calliste had to consult with a surgical specialist and take prescription medication as part of his treatment.

117.    Mr. Calliste has suffered, and continues to suffer, severe and ongoing damages, specifically including physical pain and injuries, inadequate medical care, serious psychological and emotional damage, loss of familial relationships, and loss of quality of life.

118.    The acts and omissions of Defendants entitle Mr. Calliste to compensatory and punitive damages.

## FIRST CLAIM FOR RELIEF

### Unreasonable Seizure via Excessive Force Under 42 USC § 1983
### Against Officer Lor

119.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

120.    On July 31, 2018, Officer Lor intentionally discharged his service weapon twice. The first shot entered Mr. Calliste's vehicle from the side as the vehicle was passing by Officer Lor. The second shot entered Mr. Calliste's vehicle from behind after the vehicle had already passed by the vicinity where Officer Lor was standing.

121.    Both shots struck Mr. Calliste, effectuating two distinct seizures of Mr. Calliste for purposes of the Fourth Amendment.

122.    When a law enforcement officer fires his or her gun at a suspect, the use of the gun is considered deadly physical force.

123.    The two gunshots amounted to unreasonable seizures for purposes of the Fourth Amendment, as no reasonable officer in the same circumstances would have believed that the

15

use of deadly physical force was necessary at that moment to protect against imminent harm to himself or other bystanders.

124.    The unreasonable seizures on July 31, 2018 amounted to excessive force in violation of the Fourth Amendment.

125.    At the time of the shooting, Mr. Calliste was suspected only of a non-violent misdemeanor offense. Neither the crime of which Mr. Calliste was suspected, nor his general behavior, nor anything else about Mr. Calliste would have raised concerns that he posed a significant threat of death or serious physical injury to officers or civilians.

126.    Because Mr. Calliste was in a slow-moving car, was maneuvering his car at a safe distance away from Officer Lor, was not aiming his car at any civilian pedestrians, and was not believed to be a fleeing felon likely to harm others, Officer Lor's use of force was unreasonable under the Fourth Amendment.

127.    Upon information and belief, Officer Lor discharged his weapon for the purpose of detaining and arresting Mr. Calliste – not for the purpose of protecting himself from imminent risk of death or bodily harm.

128.    Even if Officer Lor genuinely feared for his life at the moment that he fired two shots at Mr. Calliste, his actions were objectively unreasonable. This is demonstrated by the fact that Officer Lor fired the first shot after the front bumper of Mr. Calliste's car had already passed by the vicinity where Officer Lor had been standing, suggesting that any perceived threat had already passed. Officer Lor fired the second shot after the full length of Mr. Calliste's car had already traveled past the vicinity where Mr. Lor had been standing.

129.    Because Officer Lor fired both of his shots after any perceived threat had already dissipated, Officer Lor is not entitled to qualified immunity.

16

130.    Office Lor had sufficient notice that his shots from behind Plaintiff's moving vehicle would be unconstitutional; thus, Officer Lor is not entitled to qualified immunity.

131.    Specifically, case law from the Fourth Circuit Court of Appeals, also cited in Defendant's legal bulletin, clearly established in 2005 that a police officer effectuates an unreasonable seizure of a motorist when that officer: 1) is a pedestrian; 2) fires his weapon because he believes an approaching vehicle poses an imminent risk to that officer; and 3) fires his weapon after the approaching vehicle has already passed by.

132.    Both of Officer Lor's shots meet the description above, and therefore in 2018, there existed a clearly established right to be free of an unreasonable seizure of this kind.

133.    Officer Lor's excessive use of force proximately caused Mr. Calliste's damages.

134.    Officer Lor's actions were intentional, malicious, willful, wanton, and/or reckless disregard for Calliste's constitutionally protected rights, thereby entitling Calliste to an award of punitive damages.

**SECOND CLAIM FOR RELIEF**

**Fourth Amendment Unreasonable Seizure (i.e., Malicious Prosecution) under 42 USC § 1983**
**Against Officer Osorio**

135.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

136.    At all times relevant to this action, Mr. Calliste had the right under the Fourth Amendment to not be prosecuted without probable cause. *See Durham v. Horner*, 690 F.3d 183 (4th Cir. 2012).[3]

---

[3] *Durham v. Horner,* 690 F.3d 183, 188 (4th Cir. 2012) ("More specifically, 'we have required that [1] the defendant have 'seized plaintiff pursuant to legal process that was not supported by probable cause and [2] that the criminal proceedings have terminated in plaintiff's favor.'" *Burrell v. Virginia,* 395 F.3d 508, 514 (4th Cir.2005) (quoting *Brooks v. City of Winston–Salem,* 85 F.3d 178, 183–84 (4th Cir.1996)) (alterations and emphasis omitted)).

17

137.    On or about August 1, 2018, Officer Osorio sought to obtain from a magistrate an arrest warrant that would authorize officers to arrest Mr. Calliste for a violation of NC GEN STAT § 14.34.2 (assault with a firearm or other deadly weapon upon governmental officers or employees).

138.    As described above, Officer Osorio subjectively knew that there was inadequate evidence to support probable cause to believe that Mr. Calliste committed assault with a deadly weapon on July 31, 2018.

139.    Despite knowing that probable cause did not exist to arrest and prosecute Mr. Calliste for assault with a deadly weapon, Officer Osorio intentionally, recklessly, and with malice took steps to ensure that Mr. Calliste would be arrested, held on bail, and prosecuted for that criminal offense.

140.    As a result of Officer Osorio's acts, Mr. Calliste was arrested, charged, held, and prosecuted without probable cause.

141.    As a direct result of Officer Osorio's reckless acts, Mr. Calliste spent several days in jail as a pretrial detainee. In this sense, Officer Osorio's actions were the but-for cause of Mr. Calliste's Fourth Amendment constitutional deprivation.

142.    In January 2019, the Mecklenburg County District Attorney Office dismissed all charges against Mr. Calliste.

143.    With the dismissal of the criminal charge by the Mecklenburg County District Attorney's Office in January 2019, the criminal process was resolved in favor of Mr. Calliste for purposes of a Section 1983 claim under the Fourth Amendment.

18

## THIRD CLAIM FOR RELIEF

### Assault and Battery under North Carolina Law
### Against Officer Lor

144.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

145.    The unjustified actions of Officer Lor in intentionally shooting Mr. Calliste without legal justification constitute assault and battery under state law.

146.    On July 31, 2018, Defendant Officer Lor pointed his weapon at Mr. Calliste and intentionally shot at him twice.

147.    Bullets intentionally fired from Officer Lor's gun struck Mr. Calliste and amounted to an unwanted touching.

148.    The intentional acts and displays of force and violence by Officer Lor caused Mr. Calliste to suffer serious bodily injury.

149.    The unjustified actions of Officer Lor were undertaken in such a manner as amounts to malice, thereby piercing any entitlement to public officer immunity.

150.    Officer Lor acted with malice because he acted recklessly, in a willfully negligent, and criminally negligent manner.

151.    Officer Lor's recklessness is demonstrated by the fact that he ignored his training and long-standing CMPD policies to not place himself in the path of a moving vehicle and to not fire shots at a moving vehicle except in extremely limited circumstances, and to not (under any circumstance) fire shots at a moving vehicle from behind when there exists no threat that the officer may be in the line of travel.

152.    Officer Lor's use of deadly force was not justified because his actions violated NC GEN STAT § 15A-401(d)(2), which prohibits law enforcement officers from using deadly physical force for reasons other than defending oneself or other third parties.

153.    N.C. Gen. Stat. § 15A–401(d)(2), which sets forth the "situations in which a police officer may use deadly force without fear of incurring criminal or civil liability." *State v. Irick*, 231 S.E.2d 833, 846 (N.C. 1977).

154.    At the time Officer Lor fired his weapon, Officer Lor did not do so in defense of himself or third persons.

155.    Mr. Calliste did not threaten the use of deadly physical force.

156.    Officer Lor did not reasonably believe that Mr. Calliste's car was serving as a deadly weapon in the moment that he removed his firearm from its holster, as an objectively reasonable officer in the same position would not have so believed.

157.    Officer Lor did not reasonably believe that Mr. Calliste's car was serving as a deadly weapon in the moments that he pulled the trigger of his firearm, as an objectively reasonable officer in the same position would not have so believed.

158.    The conduct of Officer Lor was unreasonable under the circumstances, was excessive, inappropriate in response to the situation at hand, exceeded his statutory authority, and done with such reckless indifference to the health, safety, and rights of Mr. Calliste that they intended, at least constructively, to harm him.

159.    As a direct and proximate result of this unlawful conduct, Mr. Calliste sustained the damages previously alleged.

160.    Mr. Calliste is entitled to punitive damages because Defendants acted with deliberate, willful, and wanton disregard of Mr. Calliste's rights and privileges.

20

## FOURTH CLAIM FOR RELIEF

### Common Law Malicious Prosecution
### Against Officer Osorio and City of Charlotte

161.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

162.    By their conduct, as described herein, Officer Osorio and the City of Charlotte are liable to Mr. Calliste under North Carolina law for the tort of malicious prosecution.[4]

163.    At all relevant times, Officer Osorio acted under the color of his authority under state law.

164.    Officer Osorio, despite knowing that probable cause did not exist to arrest and continue to prosecute Plaintiff intentionally, recklessly, and with malice, caused Plaintiff to be arrested, held on bail, and prosecuted.

165.    Officer Osorio took steps to initiate criminal prosecution of Mr. Calliste under the state-law crime of assault with a deadly weapon upon a government officer, under NC GEN STAT § 14-34.2.

---

[4] *See Braswell v. Medina*, 255 N.C. App. 217, 228–29, 805 S.E.2d 498, 507 (2017) ("As shown above, Braswell's complaint alleged facts showing that (1) the Officers initiated or participated in the criminal proceeding against him; (2) they lacked probable cause to believe he committed the offense []; (3) they acted with malice; and (4) the prosecution was terminated in Braswell's favor." 'Malice' in a malicious prosecution claim may be shown by offering evidence that defendant was motivated by personal spite and a desire for revenge or that defendant acted with reckless and wanton disregard for plaintiffs' rights." Lopp v. Anderson, —— N.C. App. ——, ——, 795 S.E.2d 770, 780 (2016) (citation and quotation marks omitted). Moreover, "[m]alice can be inferred from the want of probable cause alone." Id. at ——, 795 S.E.2d at 779 (citation and quotation marks omitted). Here, Braswell has adequately alleged malice by pleading facts showing that the Officers not only lacked probable cause to believe he was guilty of the crime for which he was ultimately charged but also concealed and fabricated evidence in order to cause him to be prosecuted for that offense. Accordingly, Braswell has properly stated claims for malicious prosecution against the Rocky Mount Defendants under North Carolina law, and the trial court erred in dismissing these claims. See Chidnese v. Chidnese, 210 N.C. App. 299, 310, 708 S.E.2d 725, 734 (2011) ("Treating these allegations as true, these facts can be construed to state that [the defendant] procured a criminal prosecution against plaintiff with malice and without probable cause, and that the prosecution terminated favorably for the plaintiff, satisfying all of the elements of malicious prosecution." (citation omitted)).

21

166.    Officer Osorio's actions were the but-for cause of the criminal prosecution of Mr. Calliste under the above-cited statute.

167.    Specifically, Officer Osorio initiated the criminal prosecution by applying for an arrest warrant from a magistrate and averring specific facts upon which the magistrate relied.

168.    Officer Osorio had access to and viewed body-worn camera footage of the alleged victim of the crime (Officer Lor). Upon information and belief, the magistrate did not view this footage before signing off on the arrest warrant. Thus, the magistrate relied upon Officer Osorio's account of events in issuing the warrant.

169.    Officer Osorio, at the time he applied for an arrest warrant, knew that Officer Lor was not in the path of Mr. Calliste's moving vehicle.

170.    Officer Osorio, at the time he applied for an arrest warrant, knew that Officer Lor was never in imminent risk of being struck by Mr. Calliste's moving vehicle.

171.    Officer Osorio, at the time he applied for an arrest warrant, knew that Mr. Calliste's vehicle was traveling at a slow to moderate rate of speed during all relevant times.

172.    Officer Osorio, at the time he applied for an arrest warrant, had reasonable evidence at his disposal strongly suggesting that Mr. Calliste's motivations during the seconds in question were not to cause harm to a police officer.

173.    Officer Osorio initiated the criminal prosecution, despite knowing that probable cause did not exist to arrest Mr. Calliste. This amounted, at the very least, to recklessness.

174.    Officer Osorio intentionally, recklessly, and with malice, caused Mr. Calliste to be arrested, held on bail, and prosecuted.

175.    Officer Osorio's malice may be inferred from the fact that there was no probable cause to believe that Mr. Calliste committed the underlying crime (NC GEN STAT § 14-34.2).

176.    As a direct and proximate result of the Defendants' acts, Mr. Calliste was wrongfully

arrested and jailed for 19 days, causing Plaintiff to suffer the injuries and damages described

above.

177.    In January 2019, the Mecklenburg County District Attorney's Office dropped the

criminal charge described above. This action resulted in the criminal proceeding ending in

Mr. Calliste's favor, for purposes of the state law tort of malicious prosecution.

### FIFTH CLAIM FOR RELIEF

**Negligence Per Se**
**Against Officer Lor and City of Charlotte**

178.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the

above paragraphs with the same force and effect as if fully set forth herein.

179.    North Carolina General Statute Section 15A-401(d)[5] governs the use of force by law

enforcement, and "in effect proscribes the use of the force by a law enforcement officer if the

officer either knows that the arrest is unauthorized or does not have a reasonable belief that

the suspect has committed a criminal offense."

180.    Upon information and belief, the North Carolina legislature enacted Section 15A-401(d),

at least in part, to promote the safety and protection of the general public by delineating the

situations in which peace officers are permitted and not permitted to use deadly physical

force.

181.    Defendant Officer Lor was not justified in using force against Mr. Calliste.

---

[5] OFFICER CANNOT SHOOT AT FLEEING MISDEMEANANT. --Where a person charged with a misdemeanor
is fleeing from arrest, and is out of the control of the officer, such officer is guilty of an assault if he shoots at said
person. And indeed the use of a pistol in attempting to arrest for a misdemeanor is excessive force. Sossamon v.
Cruse, 133 N.C. 470, 45 S.E. 757 (1903).

23

182.    At the time Officer Lor fired his weapon at Mr. Calliste, Officer Lor had no right to use a

deadly weapon in attempting to arrest Mr. Calliste for the alleged commission of a

misdemeanor.

183.    At the time Officer Lor fired his weapon at Mr. Calliste, Officer Lor did not do so in

defense of himself or third persons in violation of  N.C. Gen. Stat. § 15A-401(d)(1)(b).

184.    At the time Officer Lor fired his weapon at Mr. Calliste, Mr. Calliste did not use nor

display imminent use of physical force against Officer Lor or against bystanders.

185.    For purposes of common law negligence, Officer Lor's willful disregard of the provisions

of N.C. Gen. Stat. § 15A-401 establishes that Officer Lor breached a duty of care owed to

members of the public with whom he interacts.

186.    For the same reason, Officer Lor's willful, wanton disregard of N.C. Gen. Stat. § 15A-

401(d) demonstrates that Officer Lor acted with the requisite degree of malice to pierce or

otherwise overcome public official immunity under North Carolina law.

187.    Mr. Calliste seeks and is entitled to recover compensatory damages for the above-

described conduct.

## SIXTH CLAIM FOR RELIEF

### Common Law Obstruction of Justice
### Against Officer Osorio

188.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the

above paragraphs with the same force and effect as if fully set forth herein.

189.    As described above, Officer Osorio on August 1, 2018 misrepresented facts in a sworn

affidavit that he prepared for the purpose of securing an arrest warrant that would authorize

the arrest of Mr. Calliste for the state-law crime of assault with a deadly weapon on a

government officer.

24

190.    By asserting a materially false statement in the August 1, 2018 affidavit, Officer Osorio

acted with the intention of obstructing, impeding, or hindering public or legal justice.

191.    Specifically, Officer Osorio's actions were intended either to shield his work colleague –

Officer Lor – from potential criminal prosecution for the shooting upon Mr. Calliste, or

Officer Osorio's actions were intended to frustrate Mr. Calliste's future attempts to bring a

civil lawsuit against Officer Lor and the City of Charlotte.

192.    For purposes of the common law tort of obstruction of justice, it is not relevant whether

Officer Osorio's efforts to obstruct the judicial process were successful or not. It matters only

that Officer Osorio intended that to be the natural consequence of his actions.

193.    The affidavit that Officer Osorio swore out is a government document that he, as a

trained law enforcement officer, would have expected to have been relied upon by lawyers,

prosecutors, and judges in subsequent legal proceedings – both civil and criminal.

194.     As a consequence of Officer Osorio's falsification on the affidavit, Mr. Calliste spent 19

days in jail and will likely find it more difficult to prosecute this underlying civil claim for

the physical injuries he sustained from the two gunshot wounds.

### SEVENTH CLAIM FOR RELIEF

**Common Law False Arrest**
**Against City of Charlotte**

195.    Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above

paragraphs with the same force and effect as if fully set forth herein.

196.    Upon information and belief, police officers with CMPD on August 1, 2018, arrived at the

hospital room where Mr. Calliste was convalescing. They placed him under arrest at that time

for an assault with a deadly weapon on a government official.

25

197.    By arresting Mr. Calliste while he was still inside the hospital, police officers with
        CMPD effectuated a warrantless arrest on Mr. Calliste.

198.    Mr. Calliste was arrested without a warrant and continued to be held in custody in that
        capacity until an arrest warrant was issued by a neutral magistrate and Mr. Calliste was
        served with that arrest warrant.

199.    Consequently, this cause of action seeks damages for the short period of time during
        which Mr. Calliste was arrested without the benefit of legal process until the moment that the
        arrest warrant was issued and served on Mr. Calliste.

200.    An arrest warrant was issued on August 1, 2018 for the crime of assault with a deadly
        weapon on a government official. Upon information and belief, the arrest warrant was not
        served on Mr. Calliste until the following day – August 2, 2018.

201.    Police officers with CMPD arrested Mr. Calliste within the hospital while knowing that
        they lacked probable cause to believe that Mr. Calliste had assaulted a government officer
        with a deadly weapon.

202.    Police officers' actions in arresting Mr. Calliste without probable cause and without an
        arrest warrant amounted to a false arrest for purposes of the state-law tort. Additionally,
        police officers' actions were undertaken with a degree of malice, because they chose to arrest
        Mr. Calliste with reckless disregard as to whether probable cause actually existed.

203.    As a direct and proximate result of the Defendants' acts, Plaintiff was wrongfully arrested
        and imprisoned, causing them to suffer the injuries and damages described above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays to the Court enter judgment for Plaintiff and order relief as follows

204.    Compensatory damages against all defendants, jointly and severally;

205.    Punitive damages against the individual defendants, jointly and severally;

206.    Reasonable attorneys' fees and costs pursuant to 28 USC § 1988; and

207.    That the Court grant any other and further relief it deems equitable and just


Respectfully submitted, the 19th day of November, 2021.

*/s/ Micheal L. Littlejohn Jr.*
Micheal L. Littlejohn Jr. N.C. Bar No.49353
Littlejohn Law PLLC
PO Box 16661
Charlotte, NC 28297
Telephone: (704) 322-4581
Fax: (704) 625-9396
Email: mll@littlejohn-law.com
*Counsel for Plaintiff*

27

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

XYAVIER CALLISTE,

                Plaintiff,

    v.

THE CITY OF CHARLOTTE; Officer XENG LOR, in his individual capacity; Officer DAVE OSORIO, in his individual capacity,

                Defendants.

**CERTIFICATE OF SERVICE**

       This is to certify that the undersigned has this day electronically filed the foregoing **PLAINTIFF'S FIRST AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system which will send electronic notification of the filing to the following:

                Roger A. McCalman
                Assistant City Attorney
                Roger.McCalman@charlottenc.gov
                *Attorney for the City of Charlotte*

                Stephanie H. Webster
                CRANFILL SUMNER LLP
                swebster@cshlaw.com
                *Attorneys for Defendant Xeng Lor, in his Individual capacity*

The 19th day of November, 2021.

                /s/ Micheal L. Littlejohn Jr. _____
                Micheal L. Littlejohn Jr.
                N.C. Bar No. 49353
                Littlejohn Law PLLC
                PO Box 16661
                Charlotte, NC 28297
                Telephone: (704) 322-4581
                Email: mll@littlejohn-law.com
                *Counsel for Plaintiff*

28