UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-455-MOC-DCK

| | |
|---|---|
| XYAVIER CALLISTE, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>CITY OF CHARLOTTE, et al., )<br>)<br>Defendants. )<br>_____ ) | **ORDER** |

**THIS MATTER** comes before the Court on Defendants' two Motions to Dismiss, (Doc. Nos. 20, 21).

## I. BACKGROUND

Plaintiff filed this action on August 2, 2021, in the North Carolina General Court of Justice, Mecklenburg County Superior Court, pursuant to 42 U.S.C. § 1983. Defendants removed the action to this Court on August 30, 2021. Plaintiff filed an Amended Complaint on November 19, 2021. (Doc. 10). On January 4, 2021, Defendants filed the pending motions to dismiss the Amended Complaint.

The following allegations from Plaintiff's Amended Complaint are taken as true and construed in the light most favorable to Plaintiff:

On the evening of July 31, 2018, Plaintiff drove his car to the Charlotte Douglas International Airport. Plaintiff drove his vehicle into a parking garage that was designated specifically for airport employees. Plaintiff was not an employee of the airport or of any business located at the airport. At approximately 9:30 pm on July 31, 2018, CMPD police officers received a report of a suspicious vehicle driving inside the employee-designated airport parking

1

garage located on Wilkinson Boulevard. A parking garage worker told dispatchers that a suspicious vehicle followed an authorized car into the parking area.

Other than the minor offense of trespassing, the driver of the suspicious vehicle was not suspected of committing any crime inside the parking area. Upon information and belief, the call reporting the suspicious vehicle did not convey concerns about the vehicle containing a weapon. Upon information and belief, the call reporting the suspicious vehicle did not convey concerns about a felony or violent crime.

Officer Lor has been employed by CMPD since January 5, 2009. Officer Lor was assigned to the Airport Division. Officer Lor was the first officer to respond to the scene. Officer Lor was investigating a misdemeanor offense. Officer Lor was able to identify the vehicle matching the description – a black Dodge car. Upon locating the black Dodge, Officer Lor did not obtain the license plate number. The black Dodge car that matched the description was driven by Plaintiff. Upon information and belief, Officer Lor did not speak with Plaintiff.

Officer Lor attempted to cut off Plaintiff's exit by parking his police vehicle in such a position that would impede the flow of vehicles seeking to exit the parking garage. To this end, Officer Lor initiated a traffic stop of a black Hyundai. Plaintiff was driving immediately behind the black Hyundai as he began his exit. The airport exit was a one-lane exit route with grass located to the right side. Officer Lor stopped the Hyundai by stepping out of his police vehicle, standing in the middle of the exit ramp, and extending his hand. Officer Lor successfully stopped the black Hyundai.

Officer Lor, at the time of the stop, was positioned in front of the Hyundai, facing the front windshield of the car. Officer Lor was positioned centrally to the Hyundai. From where Officer Lor stood at the moment of stopping the Hyundai, there was roughly an equal distance to

either the driver's or passenger's side of the Hyundai.

With the Hyundai stopped in front of him, Plaintiff attempted to leave the scene by driving his vehicle off the pavement and onto the grassy area. In this manner, Plaintiff's vehicle maneuvered to the right of the Hyundai. Plaintiff's vehicle did not make any contact with the Hyundai. As Plaintiff maneuvered his vehicle around the passenger side of the Hyundai, Officer Lor shouted twice, "get out of the car." Officer Lor gave his verbal commands while Plaintiff's vehicle and the Hyundai were side-by-side, with the Hyundai stopped on the pavement and Plaintiff's vehicle traveling in the grassy area adjacent to the pavement.

Plaintiff turned his vehicle away from Officer Lor and the Hyundai. As the Dodge drove through the grass, and before Officer Lor fired his weapon, a large space can be seen between Officer Lor and the car driven by Plaintiff. Despite the large gap, within two seconds of giving verbal commands, Officer Lor fired his weapon twice. Officer Lor fired his weapon twice at a moving vehicle. Officer Lor fired his weapon twice into the driver's side window as Plaintiff drove past him. Officer Lor's first shot was fired as Plaintiff's vehicle was next to Officer Lor. At the time of the first shot, the front end of Plaintiff's vehicle had already passed by Officer Lor. Officer Lor's second shot was fired after Plaintiff's vehicle had already passed by. In other words, Officer Lor's second shot entered Plaintiff's vehicle from behind.

Plaintiff was struck by two bullets. Those two bullets caused three distinct injuries. Plaintiff did not stop his car at that time but continued to exit the airport. Upon information and belief, the purpose for Officer Lor firing his weapon was to stop a fleeing suspect who was believed to have committed a mere misdemeanor offense. As Plaintiff's vehicle passed by and away from Officer Lor, it was unreasonable for Officer Lor to believe he was in peril.

Plaintiff did not use deadly force against Officer Lor. Plaintiff did not threaten the use of

3

deadly force against Officer Lor. At the time that Officer Lor fired two shots, there were no civilian pedestrians in the path of Plaintiff's moving vehicle. As the body cam shows, Officer Lor positioned himself closer toward the path of the oncoming car and did not take reasonable steps to move out the way of Plaintiff's vehicle. Plaintiff, while exiting the parking area, did not drive at excessively fast speeds. Plaintiff, while exiting the parking area, did not drive the car toward Officer Lor or any other person. Plaintiff was not armed and was not suspected of being armed.

At no time prior to the incident did Plaintiff demonstrate that he either was willing to injure an officer that got in the way of escape or was willing to persist in extremely reckless behavior. The driver of the Hyundai was not in danger of being injured by Plaintiff. Officer Lor was not in danger of being injured by Plaintiff.

Officer Lor fired the first shot after the front bumper of Plaintiff's car had already passed by the vicinity where Officer Lor had been standing, suggesting that any perceived threat had already passed. Officer Lor fired the second shot after the full length of Plaintiff's car had already traveled past the vicinity where Mr. Lor had been standing. Officer Lor did not take reasonable steps to move further away from the likely trajectory of travel of Plaintiff's vehicle. Officer Lor's body worn camera shows he moved closer to Plaintiff's oncoming vehicle, with his weapon drawn, during the seconds leading up to his decision to fire his weapon.

Against policy, Officer Lor placed himself in danger and later used force in an attempt to justify such use of force. Officer Lor stepped closer toward what he evidently perceived to be the zone of danger.

After the above-described incident, spokespersons for the City of Charlotte said that police had suspected Plaintiff of contributing to a recent string of car break-ins at the airport,

4

with suspects typically sneaking into parking areas in a manner similar to how Plaintiff was believed to have snuck into the employee-restricted parking garage. However, a day after the incident, police spokespersons could not state affirmatively Plaintiff's business at the airport. Kerr Putney, former Police Chief for CMPD, stated, "We just know that is the [modus operandi] and the employee was wise enough to alert us when he experienced it, and our officers tried to investigate, and that's when one of the officers felt his life was in danger and fired rounds to prevent being injured." Plaintiff was not a person who had committed a violent crime, nor was there any reason to believe he would do so if permitted to escape.

On July 31, 2018, Plaintiff sought treatment at the hospital for his gunshot wounds. Per hospital policy, the CMPD was called because of the gunshot wounds. Upon information and belief, CMPD officers located Plaintiff at the local hospital during the early morning hours of August 1, 2018. Although Plaintiff was still recovering at the hospital from his gunshot wounds, he was arrested by CMPD officers while still inside the hospital.

Later in the day on August 1, 2018, Officer Osorio sought an arrest warrant from a magistrate for assault with a deadly weapon on a government officer, in violation of N.C. GEN. STAT. § 14-34.2. Officer Osorio sought this arrest warrant because CMPD took the position that Plaintiff may have intended to strike Officer Lor with his vehicle during the moments when Plaintiff pulled his vehicle up onto the grassy area.

At the time that Officer Osorio sought to obtain the above-described arrest warrant, Officer Osorio knew that Plaintiff was at a nearby hospital and knew how to locate him. Despite knowing where to find Plaintiff, Officer Osorio sought the arrest warrant without first speaking with Plaintiff. Officer Osorio swore out an affidavit, under oath, attesting that there existed probable cause to believe that Plaintiff assaulted Officer Lor with a deadly weapon on July 31,

2018, by "accelerating and driving [a motor vehicle] towards the officer."

Officer Osorio reviewed footage from Officer Lor's body camera prior to preparing an application for an arrest warrant. Footage from Officer Lor's body camera does not substantiate Officer Osorio's assertion that Plaintiff was "accelerating and driving towards the officer." At the time that Officer Osorio sought the above-described arrest warrant, Officer Osorio had seen footage of Officer Lor's body-worn camera, which depicts Officer Lor intentionally placing himself closer to the line of travel of Plaintiff's moving vehicle in the seconds before Defendant Lor reported feeling that his life was in danger from said vehicle.

At the time that Officer Osorio sought the above-described arrest warrant, Officer Osorio possessed reliable evidence suggesting that Plaintiff's evasive driving maneuver was for the purpose of evading police–not for the purpose of causing harm to police. At the time that Officer Osorio sought the above-described arrest warrant, Officer Osorio had seen footage of Officer Lor's body-worn camera, which shows that Plaintiff's vehicle passed by Officer Lor at a path of travel at least two yards from where Officer Lor was standing.

Relying on the information provided by Officer Osorio, a Mecklenburg County Magistrate issued an arrest warrant for Plaintiff. Officer Osorio initiated the criminal prosecution by applying for an arrest warrant from a magistrate and averring specific facts upon which the magistrate relied. But for Officer Osorio's false representations, an arrest warrant would not have been issued, and there would have been no subsequent criminal prosecution for assault with a deadly weapon.

As a result of Officer Osorio's acts, Plaintiff was detained in jail for more than two weeks. But for the felony charge of assault with a deadly weapon on an officer, Plaintiff would have been cited and released for the lesser misdemeanor charge of second-degree trespass, a

Class 2 Misdemeanor under North Carolina law. A Class 2 Misdemeanor is the second-lowest offense class for misdemeanor offenses. Typically, a criminal defendant in Plaintiff's position and with Plaintiff's criminal history would be sentenced to no more than a fine upon being convicted of a Class 2 misdemeanor.

Upon information and belief, had the state court found Plaintiff guilty of the misdemeanor offense of second-degree trespass, the most severe sentence disposition a court could have chosen to impose is sixty (60) days of active time in jail or prison. Upon information and belief, Plaintiff was jailed as a pre-trial detainee for 19 days. Plaintiff's 19 days in confinement does not include time spent in the hospital for the injuries he sustained as a result of Defendant Lor's actions. Upon information and belief, Plaintiff served almost half the amount of days in jail, as a pre-trial detainee, in a similar fashion to a defendant found guilty who also had at least five (5) or more prior convictions. In other words, Officer Osorio's actions were a but-for cause of Plaintiff spending unnecessary days behind bars.

Upon information and belief, Plaintiff was handcuffed to his hospital bed for approximately 2 days before he was transferred to jail. Plaintiff was discharged from the hospital on August 2, 2018. The same day, CMPD placed Plaintiff in the custody of the Mecklenburg County Sheriff Office ("MCSO"). Plaintiff was a pre-trial detainee in the custody of MCSO from August 2, 2018, to August 22, 2018. On January 30, 2019, all charges against Plaintiff were dismissed by the Mecklenburg County District Attorney's Office.

Based on above allegations, Plaintiff brings the following claims against Defendants: (1) a claim of excessive force against Defendant Lor, in violation of the Fourth Amendment; (2) a claim alleging a Fourth Amendment claim for malicious prosecution against Defendant Osorio; (3) a claim for assault and battery against Defendant Lor under North Carolina state law; (4) a

7

claim under common law for malicious prosecution against Defendant Osorio and the City of Charlotte; (5) a claim for negligence per se against Defendant Lor and the City of Charlotte; (6) a claim for common law obstruction of justice against Defendant Osorio; and (7) common law false arrest against Defendant City of Charlotte.

Defendants filed the pending motions to dismiss on January 4, 2022, seeking dismissal of Plaintiff's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff has responded to the motions to dismiss, and Defendants have filed their Replies. This matter is ripe for disposition.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a motion may be dismissed for failure to state a claim upon which relief can be granted. A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint without resolving contests of fact or the merits of a claim. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992), cert. denied, 510 U.S. 828 (1993). Thus, the Rule 12(b)(6) inquiry is limited to determining if the allegations constitute "a short and plain statement of the claim showing the pleader is entitled to relief" pursuant to Federal Rule of Civil Procedure 8(a)(2). To survive a defendant's motion to dismiss, factual allegations in the complaint must be sufficient to "raise a right to relief above a speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Thus, a complaint will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

For the purposes of a Rule 12(b)(6) analysis, a claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556). The

8

Court must draw all reasonable factual inferences in favor of the plaintiff. Priority Auto Grp., Inc. v. Ford Motor Co., 757 F.3d 137, 139 (4th Cir. 2014). In a Rule 12(b)(6) analysis, the Court must separate facts from legal conclusions, as mere conclusions are not entitled to a presumption of truth. Iqbal, 556 U.S. at 678. Importantly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. However, well-pleaded factual allegations are entitled to a presumption of truth, and the court should determine whether the allegations plausibly give rise to an entitlement to relief. Id. at 679.

### III. DISCUSSION

Given the lenient pleading standards of Iqbal and Twombly, the Court will deny the motions to dismiss at this time and hold them under consideration pending further development of the record and summary judgment motions.[1]

### IV. CONCLUSION

Defendants' motions to dismiss are denied, pending further development of the record, and the Court will issue a ruling after discovery and the parties' filing of summary judgment motions.

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motions to Dismiss, (Doc. Nos. 20, 21), are **DENIED**.

---

[1] As Plaintiff correctly notes, some of the documents submitted by Defendants in support of the motion to dismiss are not amenable to judicial notice. Moreover, some of them could not be considered without converting this matter to a summary judgment motion. The Court also finds it premature to rule on Defendants' qualified immunity and public official immunity defenses at this early stage in the litigation.

9

Signed: February 4, 2022

Max O. Cogburn Jr
United States District Judge