UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-455-MOC

| | | |
|---|---|---|
| XYAVIER CALLISTE, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| | ) | **ORDER** |
| THE CITY OF CHARLOTTE, Officer | ) | |
| XENG LOR, in his individual capacity; | ) | |
| Officer Dave Osorio, in his individual | ) | |
| capacity, | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on a Motion for Summary Judgment filed by

Defendant Xeng Lor ("Defendant Lor") (Doc. No. 36), and a Motion for Summary Judgment

filed by Defendants David Osorio (Defendant Osorio) and City of Charlotte (Defendant City)

(Doc. No. 39). The Court held a hearing on these motions on June 22, 2023. This matter is ripe

for disposition.

## I.      BACKGROUND

### A.  Factual Background

This case concerns the actions taken by police after Xyavier Calliste ("Plaintiff") drove

his vehicle over the curb and through a grassy area at Charlotte-Douglas International Airport.

Defendant Lor contends that Plaintiff "drove a vehicle at a high rate of speed directly at Officer

Lor." (Doc. No. 36). Plaintiff contends that he was merely attempting "to leave the scene by

driving in the grass around . . . Officer Lor." (Doc. No. 1 ¶ 30).

On July 31, 2018, Defendant Lor was acting under color of state law as a patrol officer with the Charlotte-Mecklenburg Police Department ("CMPD"). (Doc. No. 28 ¶ 5). Around 9:00 PM, Defendant Lor responded to a call from his dispatch that a black Dodge had entered a business valet parking lot at the airport without authorization via "piggybacking." (Lor Dep. 23:10–25). Piggybacking is where one vehicle uses an authorized card to raise the security guard arm to enter a parking area, and a second vehicle following behind quickly also enters before the gate arm descends. (Lor Dep. 95:25–96:6).

Upon arriving at the airport parking lot, Defendant Lor saw a Black Dodge. Defendant Lor could not read the car's license plate, so he turned on his blue lights and siren and began following the Black Dodge. Rather than slowing down and pulling over, the Black Dodge accelerated away from the patrol car. Instead of chasing the Black Dodge, Defendant Lor decided to go to the parking lot's exit and wait for the Black Dodge to leave. The parking lot has a one-lane exit with a grassy area on the right side.

Once Defendant Lor arrived at the exit he saw another vehicle—not the Black Dodge—approaching the exit. Defendant Lor exited his patrol car and approached the other vehicle's passenger side to speak to the driver. Defendant Lor approached the passenger side of the other car because he believes it is safer to engage a driver from the passenger side of a car. (Id., Lor Dep. 28).

As Defendant Lor stood by the other car's passenger side, the Black Dodge approached Defendant Lor and the other car from behind. Defendant Lor surmised that the Black Dodge was picking up speed. (Id., Lor Dep. 30). Both Defendant Lor and the other car were directly in the path of the Black Dodge. (Doc. No. 10 ¶ 56). As the Black Dodge neared, it drove into the grassy

area on the right of the exit, and passed around the passenger side of the other car where Defendant Lor was standing. (Doc. No. 10 ¶ 38).

As the Black Dodge approached and narrowly passed Defendant Lor, he twice shouted "get out of the car." (Ex. 1, Lor Dep. 96). Plaintiff continued to drive past him. Even as the front bumper of Plaintiff's car passed Officer Lor, Defendant Lor believed he was in immediate danger of death or serious bodily injury. (Id., Lor Dep. 95). Besides the other car and Defendant Lor, there were no people in the path of Plaintiff's vehicle. (Doc. No. 27 ¶ 55).

Approximately two seconds after yelling the first "get out of the car," Defendant Lor fired his gun twice. Defendant Lor fired as Plaintiff's car was alongside Defendant Lor. When Defendant Lor fired, the front bumper of Plaintiff's car had already passed Defendant Lor. (Doc. No. 36, Exhibit 4). It is undisputed that Defendant's shots entered Plaintiff's vehicle through the driver's side. (Lor Dep. 35:12; Doc. No. 36 (requesting the Court take judicial notice of Doc. No. 9-4); Id. (analogizing to the facts of Gordon v. Bierenga, 20 F.4th 1077, 1079 (6th Cir. 2021) (cert. denied, 143 S.Ct. 302 (2022); Doc. No. 43 ¶ 15). Both shots struck Plaintiff.

Despite being shot twice, Plaintiff did not stop his vehicle but continued to exit the airport. (Doc. No. 28 ¶ 50; see also Doc. No. 27 ¶ 50). After exiting the airport, Plaintiff sought medical treatment. Per hospital policy, CMPD was called because Plaintiff had suffered gunshot wounds. (Doc. No. 28 ¶ 80). Plaintiff was treated in the hospital for two days, after which he was transferred to CMPD headquarters. Defendant Osorio then conducted a custodial interrogation of Plaintiff. (Doc. No. 39-3 at 1). Plaintiff was subsequently booked into custody at the Mecklenburg County Jail. Eventually, all charges against Plaintiff were dismissed by the district attorney's office. (Doc. No. 28 ¶ 103).

3

Following this incident, Plaintiff filed the present suit bringing claims against Defendant Lor (the shooting officer), Defendant Osorio (the officer who investigated the incident and obtained a warrant for Plaintiff's arrest), and Defendant City of Charlotte.

Plaintiff asserts three claims against Defendant Lor: (1) Officer Lor used excessive force in violation of the Fourth Amendment to the U.S. Constitution (First Claim for Relief); (2) Officer Lor committed assault and battery (Third Claim for Relief); and (3) Officer Lor is liable under a negligence *per se* theory pursuant to N.C. Gen. Stat. § 15A-401 (Fifth Claim for Relief).

Plaintiff asserts five claims against Defendant Osorio and Defendant City: (1) Defendant Osorio unreasonably seized Plaintiff in violation of Section 1983 (Second Claim for Relief); (2) Defendants City and Osorio are liable for common law malicious prosecution (Fourth Claim for Relief); (3) Defendant City is liable under a negligence *per se* theory pursuant to N.C. Gen. Stat. § 15A-401 (Fifth Claim for Relief); (4) Detective Osorio is liable for common law obstruction of justice (Sixth Claim for Relief); and (5) Defendant City is liable for false arrest (Seventh Claim for Relief).

All Defendants have now moved for summary judgment. Plaintiff requests that this Court deny Defendants' motions for summary judgment.

### B. Procedural Background

Plaintiff filed his Complaint against Defendants on August 2, 2021 in the North Carolina General Court of Justice, Mecklenburg County Superior Court. Defendant Lor removed the action to this Court soon after. (Doc. No. 1). Defendants responded to Plaintiff's Complaint by filing respective Motions to Dismiss. (Doc. Nos. 8, 9).

Plaintiff filed an Amended Complaint in November of 2021. (Doc. No. 10). Consequently, the Court terminated Defendants' Motions to Dismiss as moot. (Doc. No. 18). In

January of 2022, Defendants filed new Motions to Dismiss. (Doc. Nos. 20, 21). The Court denied these motions. (Doc. No. 26). Subsequently, the parties conducted discovery. Defendant Lor now moves for summary judgment. (Doc. No. 36). Plaintiff has responded in opposition and Defendant Lor has filed a reply. (Doc. Nos. 43, 47). Defendants Osorio and City have also filed a joint motion for summary judgment. (Doc. No. 39). Plaintiff has responded in opposition and Defendants City and Osorio have filed a reply. (Doc. Nos. 42, 49).

## II.    STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id at 538 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the

nonmoving party." <u>Anderson</u>, 477 U.S. at 248; <u>accord</u> <u>Sylvia Dev. Corp. v. Calvert Cnty., Md.</u>, 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. <u>Anderson</u>, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" <u>Ricci v. DeStefano</u>, 129 S. Ct. 2658, 2677 (2009) (quoting <u>Matsushita v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986)).

## III. DISCUSSION

### a. Defendant Lor

Plaintiff's complaint states three claims against Defendant Lor: (1) a Fourth Amendment (excessive force) claim brought under Section 1983, (2) an assault and battery claim brought under North Carolina tort law, and (3) a negligence *per se* claim brought under North Carolina tort law. (Doc. No. 1). Defendant Lor's summary judgment motion rebuts Plaintiff's claims as follows: (1) Officer Lor's use of force was objectively reasonable and did not violate the Fourth Amendment; (2) Officer Lor is entitled to qualified immunity against Plaintiff's Section 1983 claim; (3) Officer Lor is entitled to public official immunity against Plaintiff's assault and battery claim; (4) Plaintiff's negligence *per se* claim is not authorized by a private cause of action under North Carolina Law. The Court addresses Defendant Lor's responses to each of Plaintiff's claims in turn.

### i. Calliste's Section 1983 Claim and Officer Lor's Qualified Immunity Defense

The doctrine of qualified immunity, established by the Supreme Court in <u>Harlow v. Fitzgerald</u>, protects government officials (like Officer Lor) from liability for civil damages (like

Section 1983 claims) so long as the official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). If Officer Lor can establish that he is entitled to qualified immunity against Plaintiff's Section 1983 claim, Officer Lor is entitled to judgment against that claim as a matter of law.

To determine whether Officer Lor is entitled to qualified immunity against Plaintiff's Section 1983 claim, this Court asks two questions. First, did Defendant's conduct violate Plaintiff's Fourth Amendment right to be free from unreasonable seizure? Second, was Plaintiff's right to be free from unreasonable seizure under these circumstances "clearly established" at the time of its alleged violation? Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs., 597 F.3d 163, 169 (4th Cir. 2010). If the answer to either question is "no," then Officer Lor is entitled to qualified immunity. Taking the facts in the light most favorable to Plaintiff, the Court finds a genuine dispute of material fact as to whether Defendant's use of deadly force violated Plaintiff's Fourth Amendment rights, and that the rights allegedly violated were "clearly established" by the Fourth Circuit at the time Defendant allegedly violated them. Consequently, Officer Lor is not entitled to judgment against Plaintiff's Section 1983 claim as a matter of law.

### 1. Plaintiff's Fourth Amendment Rights

"'The Fourth Amendment's bar on unreasonable seizures prohibits the use of excessive force by a police officer in effectuating an arrest.' Harris v. Pittman, 927 F.3d 266, 272 (4th Cir. 2019)." Livingston v. Kehagias, 803 F. App'x 673, 683 (4th Cir. 2020). Whether force is excessive and so renders a seizure unreasonable is an objective inquiry. Graham v. Connor, 490 U.S. 386, 397 (1989). As Defendant admits, it is irrelevant that Officer Lor subjectively believed Mr. Calliste intended to strike Officer Lor with his vehicle. (Doc. No. 46). What matters is

whether a reasonable officer would have found Defendant's use of force excessive "in light of the facts and circumstances confronting" Officer Lor. Graham, 490 U.S. at 397; Rowland v. Perry, 41 F.3d 167, 172 (4th Cir. 1994); Anderson v. Russell, 247 F.3d 125, 129 (4th Cir. 2001). "[T]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396.

This objective inquiry considers the point in time at which the officer actually used force, not the "point in time when [the officer] decided to shoot." (Doc. No. 43) (emphasis added); Waterman v. Batton, 393 F.3d 471, 481 (4th Cir. 2005). "[T]he reasonableness of force employed can turn on a change of circumstances during an encounter lasting only a few seconds." Harris v. Pittman, 927 F.3d 266, 274 (4th Cir. 2019) (internal quotation marks omitted). Consequently, "force justified at the beginning of an encounter is not justified even seconds later if the justification for the initial force has been eliminated." Waterman, 393 F.3d at 481.

The "totality of the circumstances" test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396; see Tennessee v. Garner, 471 U.S. 1, 8–9 (1985). "In excessive force cases where an officer uses deadly force," as here, "the second Graham factor is particularly important. In these matters, the question comes down to whether the circumstances presented an immediate threat that justified the officer's resort to lethal force as objectively reasonable, 'without regard to [the officer's] underlying intent or motivation.'" Franklin v. City of Charlotte, 64 F.4th 519, 531 (4th Cir.

8

2023) (quoting <u>Hensley on behalf of North Carolina v. Price</u>, 876 F.3d 573, 582 (4th Cir. 2017));

<u>see</u> <u>Aleman v. City of Charlotte</u>, No. 21-2223, 2023 WL 5257679, at *15 (4th Cir. Aug. 16,

2023). Put another way, "[a] reasonable officer is entitled to use deadly force '[w]here the officer

has probable cause to believe that [a] suspect poses a threat of serious physical harm, either to

the officer or to others.'" <u>Cooper v. Sheehan</u>, 735 F.3d 153, 159 (4th Cir. 2013) (quoting

<u>Tennessee v. Garner</u>, 471 U.S. 1, 11 (1985)); <u>see</u> <u>Franklin</u>, 64 F.4th at 531.

      The Fourth Circuit has held in two published opinions that where officers shoot at a

driver when they are "no longer in the trajectory" of the driver's car, they violate that driver's

Fourth Amendment right to freedom from excessive force. <u>Williams</u>, 917 F.3d at 769 (citing

<u>Waterman</u>, 393 F.3d 471). The facts of both Fourth Circuit cases are substantially similar to

those here.

      In <u>Waterman</u>, the plaintiff led police on a ten-minute car chase around Baltimore-

Washington International Airport. At the end of the chase, plaintiff accelerated from 11 to 15

miles per hour towards a group of four officers arranged between 16 and 72 feet in front of him.

<u>Waterman</u>, 917 F.3d at 474. None of the officers were directly in front of plaintiff's vehicle, but

all were within a "few feet . . . of the vehicle's projected path." <u>Id.</u> at 474–75. Perceiving

plaintiff's acceleration "as the beginning of an attempt to run them over," the officers started

shooting. <u>Id.</u> at 475. The officers continued to shoot even after plaintiff passed them, "avoiding

them by several feet." <u>Id.</u> The Fourth Circuit analyzed the two volleys (before and after plaintiff

passed the officers) separately. <u>Id.</u> at 480–82.

      With respect to the first volley, the Fourth Circuit held that the officers reasonably

interpreted plaintiff's acceleration as an "attempt by Waterman to avoid capture by using his

vehicle as a weapon against law enforcement." Thus, the officers were justified in using deadly force. Id. at 479–80. With respect to the second volley, however, the Fourth Circuit held that

> [O]nce Waterman's vehicle passed the officers, the threat to [the officers'] safety was eliminated and thus could not justify the subsequent shots. A factfinder could reasonably conclude that as the officers pursued Waterman's vehicle, they knew or should have known that Waterman had passed them without veering in their direction. Under these circumstances, a reasonable factfinder could determine that any belief that the officers continued at that point to face an imminent threat of serious physical harm would be unreasonable.

Id. at 482.

Defendant argues that "Officer Lor's two shots are virtually identical to the initial lawful shots fired by the officers in Waterman." (Doc. No. 46). Plaintiff contends that "Officer Lor's second shot," like the second volley in Waterman, "entered Mr. Calliste's vehicle from behind." (Doc. No. 10 ¶ 48). Plaintiff's contention is a bit of a stretch: Defendant surely "did not shoot into the rear of Plaintiff's vehicle" (Doc. No. 36), and even Plaintiff admits that the shots entered "through the driver's side window." (Doc. No. 43). Perhaps sensing this weakness in his argument, Plaintiff additionally contends that the Fourth Circuit's rationale in Waterman "hinges on the imminence of the threat, not the position of the shooter." (Doc. No. 43). To the extent Plaintiff recognizes that the imminence of the threat is a function of the shooter's position, his reading of Waterman is correct.

Taking the facts in the light most favorable to Plaintiff, Officer Lor shot Mr. Calliste after Officer Lor was no longer in the path of Mr. Calliste's vehicle. Defendant admits as much. (Doc. No. 36 (citing Doc. No. 9-4 at 5–6) ("As the suspect goes by, Officer Lor fires two shots at the suspect vehicle) (emphasis added)). Officer Lor's deposition testimony is clear: "The vehicle was driving toward me, and then the first time -- when my shot went off, it was beside of me. So

at the point in time <u>it was coming by</u>, that's when the shots went off." (Lor Dep. 31:16–19) (emphasis added).[1]

Nevertheless, Defendant argues that "[e]ven as the front bumper of Plaintiff's car passed Officer Lor, he still believed he was in immediate danger of death or serious bodily injury from Plaintiff's oncoming vehicle." (Doc. No. 36, ¶ 11) (citing Lor Dep. 95). But the question is not whether Defendant <u>believed</u> he was in danger. The question is whether Defendant's belief was objectively reasonable. Plaintiff contends that Officer Lor's use of deadly force was objectively unreasonable because "the threat [of being struck by Plaintiff] . . . passed [O]fficer Lor before he fired." (Doc. No. 43). In support of this argument, Plaintiff refers to the Officer Lor's body worn camera (BWC) footage, which shows that Officer Lor "fired into the side of [Plaintiff's] vehicle after the front bumper passed [Officer Lor]." <u>Id.</u> Considering the Fourth Circuit's holding in <u>Waterman</u>, and Defendant's admission that he was not in the path of Mr. Calliste's vehicle when he fired, "a reasonable factfinder could determine that any belief that [Officer Lor] continued at that point to face an imminent threat of serious physical harm would be unreasonable." <u>Waterman</u>, 393 F.3d at 482. Consequently, there is a genuine dispute of material fact as to whether Officer Lor's use of deadly force against Mr. Calliste violated the Fourth Amendment.

The Fourth Circuit's more recent decision in <u>Williams v. Strickland</u> vindicates this conclusion. In <u>Williams</u>, the Fourth Circuit applied <u>Waterman</u> to a scenario where it was unclear

---

[1] Defendant's contention that Plaintiff's vehicle was "coming at [him]" at the time he decided to shoot is immaterial. (Doc. No. 36 ¶ 12) (citing Lor Dep. at 31–32). The Fourth Amendment excessive force inquiry does not consider when the seizing officer decided to use force. Instead, it considers when that force was affirmatively used. <u>Waterman</u>, 393 F.3d at 481. What matters is not when Officer Lor <u>decided</u> to shoot Plaintiff, but when he <u>shot</u> Plaintiff. <u>Id.</u> The Fourth Circuit has recognized that the "reasonableness 'determination must focus on the moment that deadly force was used, not the whole episode[.]'" <u>Aleman</u>, 2023 WL 5257679 at *15 (quoting <u>Stanton v. Elliott</u>, 25 F.4th 227, 233 (4th Cir. 2022); <u>see id.</u> at *22.

whether the firing officer was "along side [plaintiff's] car and out of the car's trajectory" or affirmatively "behind the car." Williams, 917 F.3d at 766. The Fourth Circuit held that so long as defendant officers fired on the plaintiff "after they were no longer in the path of [plaintiff's] car," they violated the plaintiff's Fourth Amendment right to freedom from excessive force. Id. at 767.

Williams thus resolved the issue Waterman left open: where the officer is not "behind" the plaintiff, but shoots from a position "out of the car's trajectory," those shots violate the plaintiff's Fourth Amendment rights. Taking the facts in the light most favorable to Plaintiff, that is precisely what happened here. In this case, as in Williams, Officer Lor appears to have been "along side [Plaintiff's] car and out of the car's trajectory" when he fired. 917 F.3d at 766.

Defendant argues the Sixth Circuit's recent decision in Gordon v. Bierenga dictates that "Officer Lor's use of deadly force falls squarely within the parameters of what has been deemed to be a lawful use of deadly force." (Doc. No. 36). But that non-binding precedent does not contain a Fourth Amendment holding. It addresses only the second prong of the qualified immunity inquiry: whether the right in question was "clearly established."[2]

### 2. Plaintiff's Clearly Established Rights

Having found a genuine dispute of material fact as to whether Defendant violated Plaintiff's Fourth Amendment right to be free from excessive force, the next question in the qualified immunity inquiry is whether that right was "clearly established" when Defendant allegedly violated it. A "clearly established" right is one with contours "sufficiently clear that a

---

[2] Defendant additionally requests this Court take judicial notice of facts that have no bearing on the reasonableness of Officer Lor's use of force. (Doc. No. 36). That is, Defendant refers to some unsavory Facebook posts by Plaintiff and Plaintiff's alleged history of domestic violence. But objective reasonableness inquiry considers only facts known to the officer when force was used. Waterman, 393 F.3d at 481. Defendant presents no evidence that Officer Lor knew any of these things about Plaintiff when he shot him; thus, those facts are irrelevant to the Court's decision on this summary judgment motion.

reasonable official would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)). The "clearly established" analysis requires this Court to "examine 'cases of controlling authority in [this] jurisdiction,'" Franklin, 64 F.4th at 534 (quoting Amaechi v. West, 237 F.3d 356, 363 (4th Cir. 2001) (quoting Wilson v. Layne, 526 U.S. 603, 617 (1999)) namely decisions of the Supreme Court, Fourth Circuit, and North Carolina Supreme Court. Id. (quoting Owens ex rel. Owens v. Lott, 372 F.3d 267, 279 (4ᵗʰ Cir. 2004)).

Plaintiff contends that the Fourth Circuit's recent decision in Williams makes the second prong of the qualified immunity analysis "a simple one." (Doc. No. 43). Although there is probably no such thing as a "simple" qualified immunity analysis, Williams does seem to resolve the clearly established law question in Plaintiff's favor. Williams characterized Waterman thus:

> [I]n 2005, we clearly established that (1) law enforcement officers may—under certain conditions—be justified in using deadly force against the driver of a car when they are in the car's trajectory and have reason to believe that the driver will imminently and intentionally run over them, but (2) the same officers violate the Fourth Amendment if they employ deadly force against the driver once they are no longer in the car's trajectory.

917 F.3d at 770 (citation omitted).

The Fourth Circuit in Williams clarified the application of Waterman to circumstances where the defendant officer did not shoot into the rear of the plaintiff's vehicle. According to Williams, the relevant question is not whether Defendant shot into Plaintiff's vehicle from "in front" or "behind," but instead whether Defendant fired while "in the car's trajectory" or "once they [were] no longer in the car's trajectory." 917 F.3d at 770. Williams dictates that, after the Fourth Circuit decided Waterman in 2005, where an officer fires into a vehicle "once they are no longer in the car's trajectory" they violate a clearly established Fourth Amendment right. Id. Thus, to prevail against Officer Lor's qualified immunity defense on summary judgment,

Plaintiff need only establish a genuine dispute of material fact as to whether Defendant shot Plaintiff while Defendant was "no longer in the car's trajectory." Id. In light of Officer Lor's deposition testimony, Plaintiff carries this burden with ease. (Lor Dep. 31:16–19) ("The vehicle was driving toward me, and then the first time -- when my shot went off, it was beside of me. So at the point in time it was coming by, that's when the shots went off.") (emphasis added).

Defendant does not attempt to distinguish Williams from the facts at hand.[3] Instead, Defendant asserts that "Plaintiff falsely alleged in his Amended Complaint that Officer Lor fired shots into the rear of Plaintiff's car."[4] (Doc. No. 36 ¶ 24). According to Defendant, because "Plaintiff's Section 1983 claim is based upon his allegation that Officer Lor shot into the rear of Plaintiff's vehicle" (Doc. No. 36), Plaintiff's claim must fail because that allegation is false and the right clearly established in Waterman is not implicated.

Defendant is correct that the facts of this case are not precisely analogous to those in Waterman. But despite Plaintiff's imperfect analogy to Waterman, Defendant is not entitled to summary judgment on qualified immunity grounds for two reasons. First, as established above, the Fourth Circuit's decision in Williams clarified the application of Waterman, dictating that the relevant inquiry is whether Defendant was in the Plaintiff's car's trajectory, not whether

---

[3] The Court recognizes that Williams was decided after the conduct at issue in this case. Consequently, any rights that were clearly established by Williams could not have been so established at the time Officer Lor shot Mr. Calliste. But Williams did not establish any Fourth Amendment rights anew. Instead, it clarified the Fourth Circuit's decision in Waterman as applied to slightly distinguished facts. The rights established in Waterman have been clear since that case came down in 2005. In any event, Defendant moved for summary judgment and bears the burden of showing that he is entitled to judgment as a matter of law. He has failed to do so here.

[4] Defendant mischaracterizes the language of Plaintiff's First Amended Complaint. (Doc. No. 10). Plaintiff does not allege that Officer Lor "shot into the rear of Plaintiff's vehicle" (Doc. No. 36) but instead that "Officer Lor's second shot was fired after Mr. Calliste's vehicle had already passed by. In other words, Officer Lor's second shot entered Mr. Calliste's vehicle from behind." (Doc. No. 10 ¶ 48). The word "rear" is not used in Plaintiff's First Amended Complaint.

14

Defendant was in front of Plaintiff's vehicle. Even though it was decided after the conduct at issue in this case, Williams did not establish a new right, and is not a radical departure from the Fourth Circuit's rationale in Waterman. Indeed, Waterman used language like the "projected path" of the plaintiff's vehicle to distinguish constitutional shots from unconstitutional ones. 393 F.3d at 479, 482. Defendant thus had "fair warning" that shooting Plaintiff from outside the trajectory of Plaintiff's vehicle was unconstitutional. See Pelzer, 536 U.S. at 740 n.10 (2002). Because Plaintiff has established a genuine issue as to the material fact of whether Defendant was in the "projected path" of Plaintiff's vehicle when Defendant fired, Defendant has not met his burden to show that he did not violate Plaintiff's clearly established rights.

Second, Plaintiff's imperfect analogy to Waterman does not entitle Defendant to summary judgment on qualified immunity grounds because "defendants can violate clearly established law under even 'novel factual circumstances.'" Franklin, 64 F.4th at 534 (quoting Williamson v. Stirling, 912 F.3d 154, 187 (4th Cir. 2018) (citation omitted)); See Pritchett v. Alford, 973 F.2d 307, 314 (4th Cir. 1992). To say nothing of Williams, even if Waterman does not control this case completely the facts at hand are hardly "novel." Taking the facts in the light most favorable to Plaintiff, the unlawfulness of Defendant's conduct was "apparent" "in light of pre-existing law." Creighton, 483 U.S. at 640. That is all Plaintiff need establish to survive summary judgment with respect to qualified immunity.

Finally, Defendant argues that the Sixth Circuit case of Gordon v. Bierenga dictates that Plaintiff does not have a clearly established right not to be shot while fleeing police. (Doc. No. 36) (citing Gordon v. Bierenga 20 F.4th 1077, 1079 (6th Cir. 2021), cert. denied, 143 S. Ct. 302 (2022)). Of course, that case is not binding authority in this Circuit, and thus does not clearly establish or dis-establish any right. See Franklin, 64 F.4th at 534. With the obvious exception of

Supreme Court decisions, the clearly established law analysis is Circuit-specific. Id. Defendant notes that the Supreme Court denied certiorari in Bierenga but lacks authority for the proposition that denial of certiorari commands weight in the clearly established law analysis.

Even if Bierenga were binding authority, there are important factual distinctions between that case and the facts here. In Bierenga, the shooting officer's conduct was justified by the danger a fleeing suspect posed to the public. Bierenga, 20 F.4th at 1084. Officer Bierenga determined that the suspect posed a danger to the public after he "fled from Bierenga during rush hour in the middle of a major road in a populated Detroit suburb, adjacent to residential neighborhoods and businesses" and subsequently made "a reckless left turn in the face of oncoming traffic near a busy intersection to escape[.]" Bierenga, 20 F.4th at 1084. The suspect later collided with bystanders' and Officer Bieregna's vehicles, demonstrating "a willingness to strike both police and civilian vehicles to effectuate his escape from police." Bierenga, 20 F.4th at 1084.

Here, Defendant claims that his conduct was justified by the danger Plaintiff posed to Officer Lor himself, not the public at large. (Doc. No. 36) ("an objectively reasonable officer would have believed that Plaintiff's use of deadly force presented an immediate threat of death or serious bodily injury to an Officer in Officer Lor's position.") Unlike in Bierenga, Plaintiff did not strike any other vehicle. Indeed, the BWC footage establishes a genuine dispute as to whether Mr. Calliste ever "aimed" his car at Officer Lor. (Doc. No. 43)

Taking the facts in the light most favorable to Plaintiff, there is a genuine dispute as to whether Officer Lor was in the trajectory of Plaintiff's vehicle when he shot Plaintiff. Consequently, there is a genuine dispute as to whether Defendant's use of deadly force violated

Plaintiff's clearly established Fourth Amendment rights. Defendant has failed to carry his burden on summary judgment, and as to qualified immunity his motion will be denied.

### i. Plaintiff's Assault and Battery Claim

As a preliminary matter, the court notes that in the Fourth Circuit, "a 'parallel state law claim of assault and battery is subsumed within the federal excessive force claim and so goes forward as well' (or does not) if the federal claim survives summary judgment." Morgan v. City of Charlotte, No. 322CV00003KDBDCK, 2023 WL 4002524, at *16 (W.D.N.C. June 14, 2023) (quoting Rowland v. Perry, 41 F.3d 167, 174 (4th Cir. 1994)). The state law defense of public official immunity "is unavailable to officers who violate clearly established rights." Bailey v. Kennedy, 349 F.3d 731, 742 (4th Cir. 2003). With respect to North Carolina assault and battery claims specifically, the Fourth Circuit has repeatedly refused to extend public officer immunity if qualified immunity has been denied on a Section 1983 excessive force claim implicating the same facts. Thomas, 533 F. App'x at 223 (citing Bailey, 349 F.3d at 745). Accordingly, Defendant's requests for summary judgment based on qualified immunity and public official immunity (against Plaintiff's Section 1983 and state tort claims, respectively) are denied for the same reason: because Plaintiff has established a genuine dispute as to whether Defendant violated Plaintiff's clearly established Fourth Amendment right to be free from the unjustified use of deadly force.

The wisdom of the Fourth Circuit's approach is evident in this case, because "North Carolina courts have held that '[t]o establish a constitutional violation sufficient to support liability pursuant to [42 U.S.C.] § 1983, ... [a] plaintiff must establish an even greater degree of excessive force than that required for a state law tort action.'" Lee, 863 F.3d at 328 (quoting Fowler v. Valencourt, 108 N.C. App. 106, 115 (1992) rev'd in part on other grounds, 334 N.C.

17

345 (1993)); see also, Myrick v. Cooley, 91 N.C. App 209, 215 (1988) ("The threshold for determining whether the limits of privileged force have been exceeded for purposes of liability under Section 1983 is higher than that for a normal tort action."). Simply put, if Plaintiff has established a genuine dispute of material fact with respect to his Section 1983 claim, then he has a fortiori done so with respect to his state tort claims.

Having found that Plaintiff's excessive force claim survives summary judgment, the Fourth Circuit's command in Rowland is sufficient to deny Defendant Lor's summary judgment motion vis-à-vis Plaintiff's assault and battery claim. But even irrespective of the Fourth Circuit's command that "Plaintiff's assault and battery claims go the way of Plaintiff's § 1983 excessive force claims" Thomas v. Holly, 553 Fed. App'x 208, 223 (4th Cir. 2013), Defendant has not demonstrated that he is entitled to public official immunity when all facts are considered in the light most favorable to Plaintiff.

Public official immunity "shields public officials from personal liability for claims arising from discretionary acts or acts constituting mere negligence, by virtue of their office, and within the scope of their governmental duties." Bartley v. City of High Point, 381 N.C. 287, 294 (2022). "Police officers are public officials." Mills v. Duke Univ., 234 N.C. App. 380, 384 (2014) (quoting Clayton v. Branson, 153 N.C. App. 488, 492 (2002)) (citations omitted); see Campbell v. Anderson, 156 N.C. App. 371, 376 (2003).

Consequently, state tort claims "generally . . . can not be maintained against [police officers] in their individual capacity" unless "plaintiffs bring forth evidence sufficient to 'pierce the cloak of official immunity.'" Prior v. Pruett, 143 N.C. App. 612, 619 (2001) (quoting Moore v. Evans, 124 N.C. App. 35, 42 (1996) (citation omitted)). There are three exceptions to the protections of public official immunity: "[a]n individual will not enjoy the immunity's

18

protections if his action was (1) outside the scope of official authority, (2) done with malice, or (3) corrupt." Bartley, 381 N.C. at 294.[5] Where the defendant's conduct satisfies one of these exceptions, "plaintiffs are allowed to sue officials in their individual capacities, as if the suit had been brought against 'any private individual.'" Prior, 143 N.C. App. at 619 (quoting Moore, 124 N.C. App. at 42 (citation omitted)).

Defendant asserts that "[t]he record before the court does not support a conclusion that Officer Lor acted with malice, corruption[,] or outside the scope of his office." (Doc. No. 36). But on Defendant's motion for summary judgment, Plaintiff need only establish that there is enough evidence from which a reasonable jury could find that Officer Lor acted with malice, corruption, or outside the scope of his office. The North Carolina Court of Appeals has held that where "plaintiffs allegations that defendants used excessive force could support a finding that defendants' actions were beyond the scope of authority to use deadly force," plaintiffs "create[] a genuine issue of material fact as to whether the officers acted with malice, corruption, or beyond the scope of authority." Prior, 143 N.C. App. at 624. Plaintiff has done so here.

N.C. Gen. Stat. § 15A-401(d)(2) articulates the excessive force standard under North Carolina law. That statute justifies a police officer's deadly use of physical force "when it is or appears to be reasonably necessary . . . [t]o defend himself or a third person from what [the officer] reasonably believes to be the use or imminent use of deadly physical force." At the summary judgment stage, Plaintiff need only demonstrate a genuine dispute of material fact as to

---

[5] "'A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another.' In re Grad v. Kaasa, 312 N.C. 310, 313 (1984). 'An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others.' Id. at 890–91 (internal quotation marks omitted)." Thomas v. Holly, 533 F. App'x 208, 223 (4th Cir. 2013).

19

whether, at the moment Officer Lor shot Plaintiff, Officer Lor reasonably believed (1) that Plaintiff posed an "imminent" danger to the life of Officer Lor or others; and (2) that Officer Lor's use of deadly force was "necessary" to mitigate that danger. Lee v. Town of Seaboard, 863 F.3d 323, 328 (4th Cir. 2017).

In Lee v. Town of Seaboard, a police officer fired twice through the driver's side of plaintiff's vehicle after allegedly commanding plaintiff to "stop the car." 863 F.3d at 326. In Lee, the officer believed the plaintiff had struck a pedestrian with his vehicle. Id. at 325–26. There, as here, the officer shot the plaintiff through the side of his car, and the plaintiff continued driving after he had been shot. Id. at 326. There, as here, no charges were brought against plaintiff. Id. Based on the facts that the officer in Lee was "(1) never hit by [plaintiff's] car, which was moving less than twenty miles per hour; (2) five feet away from the car when he fired; and (3) facing the side of the passing car at the time he fired," the Fourth Circuit held that "a reasonable jury could conclude that [defendant officer] lacked a reasonable belief that [plaintiff] posed an imminent threat to his safety at the time of the shooting." 863 F.3d at 329. The Fourth Circuit additionally found a dispute of material fact as to whether defendant officer's use of deadly force was "necessary" under the circumstances, citing Wilcox v. City of Asheville, 222 N.C. App. 285, 292–93 for the proposition that "North Carolina courts have found that deadly force is not 'necessary' for purposes of Section 15A–401(d)(2) when an officer has a reasonable opportunity to 'avoid' the danger or threat allegedly supporting the decision to use deadly force." Lee, 863 F.3d at 329. In Lee, there was (as there is here) a genuine dispute as to the material fact of whether the shooting officer could have sought cover behind a nearby vehicle. (See Doc. No. 36 ¶ 17; Compare Doc. No. 36 ¶ 13–14 with Doc. No. 1 ¶ 56; Doc. No. 43 ¶ 38).

Given the factual similarities of this case to <u>Lee</u>, Plaintiff easily establishes a genuine dispute of material fact as to whether Defendant's use of force was excessive and thus beyond the scope of his official authority. For this reason, as well as the Court's findings with respect to Plaintiff's clearly established Fourth Amendment rights, Defendant's motion for summary judgment on the basis of public official immunity will be denied.

### ii. Plaintiff's Negligence Claim

Defendant requests summary judgment against Plaintiff's negligence *per se* claim because "N.C.G.S. §[]15A-401(d) does not prescribe a private right of action." Defense counsel misapprehends the law. Negligence is a common law tort claim. Plaintiff does not need a statutory cause of action to sue for negligence, because negligence <u>is itself</u> the cause of action. The elements of a negligence claim are duty, breach, causation, and damages. On a "garden variety" negligence claim, the duty element is defined by the "ordinary care" standard. Negligence *per se*, however, is a unique subspecies of negligence. To bring a claim of negligence *per se*, the plaintiff must allege that the defendant violated a statute, and that violation of the statute caused the plaintiff to suffer damages. With respect to the duty element, "[t]he common law rule of ordinary care does not apply—" instead, "the statute prescribes the standard" of care. <u>Parker v. Colson</u>, 266 N.C. App. 182, 186 (2019) (quoting <u>Carr v. Murrows</u> Transfer, Inc., 262 N.C. 550, 554 (1964)). Contrary to Defendant's (mis)understanding, Plaintiff does not sue under N.C. Gen. Stat. § 15A-401(d). Instead, Plaintiff argues that N.C. Gen. Stat. § 15A-401(d) provides the standard of care for Plaintiff's negligence claim, and that Defendant's violation of that statute is evidence of breach. (Doc. No. 43).

"The general rule in North Carolina is that the violation of a [public safety statute] constitutes negligence per se." <u>Byers v. Standard Concrete Prods. Co.</u>, 268 N.C. 518, 521 (1966)

21

(quoted in <u>Stein v. Asheville City Bd. of Educ.</u>, 360 N.C. 312, 326 (2006). "Accordingly, '[a] member of the class intended to be protected by a statute or regulation who suffers harm proximately caused by its violation has a claim against the violator." <u>Parker v. Colson</u>, 266 N.C. App. 182, 186 (2019) (quoting <u>Baldwin v. GTE South, Inc.</u>, 335 N.C. 544, 546 (1994)). Plaintiff avers that Defendants' violation of N.C. Gen. Stat. § 15A-401(d), which Plaintiff characterizes as a public safety statute, establishes a claim of negligence per se.

As a preliminary matter, there is some doubt that N.C. Gen. Stat. § 15A-401(d) should be classified as a public safety statute under North Carolina law. The North Carolina Supreme Court has not addressed whether N.C. Gen. Stat. § 15A-401(d) is a "public safety statute" as that term was defined in <u>Stein</u>.[6] To the extent that ruling on Defendant's summary judgment motion requires this Court "to decide questions of North Carolina law, it must utilize case law from that State's appellate courts to 'predict' how the Supreme Court of North Carolina would rule on that issue." <u>Knibbs v. Momphard</u>, 30 F.4th 200, 213 (4th Cir.), <u>cert. denied</u>, 143 S. Ct. 303 (2022) (quoting <u>Rhodes v. E.I. du Pont de Nemours & Co.</u>, 636 F.3d 88, 96 (4th Cir. 2011)). This court "'respond[s] conservatively when asked to discern governing principles of state law' and take[s] care to avoid interpreting that law in a manner that 'has not been approved' by the Supreme Court of North Carolina." <u>Id.</u>; <u>see</u> <u>Franklin v. City of Charlotte</u>, 64 F.4th 519, 530 (4th Cir. 2023).

The North Carolina Court of appeals has defined a public safety statute as one that "imposes a duty on a person for the protection of others." <u>Andrews v. Land</u>, 225 N.C. App. 264

---

[6] In <u>State v. Irick</u>, the North Carolina Supreme Court explained "[o]ur examination of G.S. 15A—401(d)(2) and prior case law lead us to the conclusion that the statute was designed solely to codify and clarify those situations in which a police officer may use deadly force without fear of incurring criminal or civil liability." 291 N.C. 480, 501 (1977).

(2013) (citing Stein v. Asheville City Bd. Of Educ., 360 N.C. 321, 326, reh'g denied, 360 N.C. 546 (2006)). But "not every statute purporting to have generalized safety implications may be interpreted to automatically result in tort liability for its violation." Id. (quoting Walden v. Morgan, 179 N.C. App. 673, 680 (2006) (citations and internal quotation marks omitted)). "In determining whether an ordinance is a public safety ordinance, [the North Carolina Supreme Court] look[s] to whether it is 'designed for the protection of life or limb' and 'imposes a duty upon members of society to uphold that protection.'" Parker, 266 N.C. App at 187 (quoting State v. Powell, 336 N.C. 762, 768–69).

In Prior v. Pruett, the North Carolina Court of Appeals identified N.C. Gen. Stat. § 15A-401(d)(2) as articulating the duty of care in a negligence action related to police use of deadly force. 143 N.C. App. 612, 620 (2001). The claim in Prior was not negligence *per se*, and the court identified "care that a reasonably prudent person would exercise in the discharge of official duties of like nature under like circumstance" as the applicable standard. Id. (citing Best v. Duke University, 337 N.C. 742, 752 (1994) (quoting Bullins v. Schmidt, 322 N.C. 580, 582 (1988)). But the Prior court later held, quoting N.C. Gen. Stat. § 15A-401(d)(2), that "an officer may be held liable for use of 'unreasonable or excessive force'" in a negligence action. 143 N.C. App. at 620. Thus, the Prior Court effectively substituted violation of N.C. Gen. Stat. § 15A-401(d)(2) for the duty and breach elements of the plaintiff's negligence claim.

"The distinction, between a violation of a statute or ordinance which is negligence per se and a violation which is not, is one of duty. In the former the duty is to obey the statute, in the latter the duty is due care under the circumstances." Carr v. Murrows Transfer, Inc., 262 N.C. 550, 554 (1964). The Prior decision suggests that where the negligence alleged relates to police use of force, this is a distinction without a difference. By defining the "care that a reasonably

23

prudent person would exercise in the discharge of official duties of like nature under like circumstance" with reference to N.C. Gen. Stat. § 15A-401(d)(2), the Prior Court suggested that all negligence claims relating to police use of force are essentially negligence *per se*, and that N.C. Gen. Stat. § 15A-401(d)(2) provides the applicable standard.

Whether this reading of Prior is sufficiently "conservative" and "avoid[s] interpreting [North Carolina" law in a manner that 'has not been approved' by the Supreme Court of North Carolina[]" is a difficult question. See Knibbs, 30 F.4th at 213 (quoting Rhodes, 636 F.3d at 96). Defendant, as movant for summary judgment, has the burden to answer this question and demonstrate that they are entitled to judgment against Plaintiff's negligence *per se* claim as a matter of law. Because Defendant's argument summarily concluded that "there is no legal support in controlling precedent supporting a claim for relief under N.C.G.S. §15A-401(d)" without engaging the North Carolina Court of Appeals' decision in Prior, Defendant has failed to carry that burden. (Doc. No. 36). Consequently, Defendant's motion for summary judgment against Plaintiff's negligence *per se* claim will be denied.

### i. Plaintiff's Claim for Punitive Damages

Defendant argues that Plaintiff's claim for punitive damages is not "cognizable." (Doc. No. 36). That is incorrect. "Cognizable" means "within the court's jurisdiction." COGNIZABLE, Black's Law Dictionary (11th ed. 2019). By Defendant's own admission, this matter arises under federal law and this Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331. (Doc. No. 1). Federal district courts with subject matter jurisdiction pursuant to 28 U.S.C. § 1331 have jurisdiction to issue punitive damages awards against state officers acting in their individual capacities. Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658 (1978); City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 254 (1981).

In the alternative, Defendant claims that Plaintiff is not entitled to punitive damages because such damages are only "available upon a showing that other torts were committed with malice." (Doc. No. 36). For this proposition, Defendant cites the North Carolina case of Hawkins v. Hawkins, 101 N.C. App. 529 (1991). Defendant's argument suffers three independently fatal flaws.

First, Defendant's characterization of Hawkins is incorrect. It is at best oversimplification, and at worst misleading, to suggest that punitive damages are available only for torts "committed with malice." (Doc. No. 36). In fact, Hawkins dictates that "plaintiff must also show the presence of aggravating circumstances such as malicious, wanton and reckless injury before plaintiff is entitled to punitive damages." Hawkins, 101 N.C. App. at 534 (emphasis added); see (Doc. No. 43). Under North Carolina law, Plaintiff may be entitled to recover punitive damages for Defendant's conduct if a jury determines that conduct was sufficiently "wanton and reckless" to justify such damages, even if it was not "malicious." Thus, Defendant's bald assertion that Plaintiff has failed to show malice, even if true, is insufficient to carry Defendant's burden as the movant on summary judgment under Federal Rule of Civil Procedure 56.

Second, even if Defendant's characterization of Hawkins was correct, his pleading's "conclusory sentence regarding punitive damages does not meet Defendant['s] burden of showing entitlement to judgment as a matter of law under Federal Rule of Civil Procedure 56." Martin v. Seabolt, No. 1:21CV906, 2023 WL 3074718, at *22 (M.D.N.C. Apr. 25, 2023). Plaintiff has alleged that "Officer Lor intended to deploy his weapon as a means of punishing Calliste for driving around a stopped car. Officer Lor's actions were therefore malicious . . . ." (Doc. No. 1). Although naked allegations are insufficient for Plaintiff to carry the burden of

persuasion where Defendant's summary judgment motion claims that Plaintiff has adduced no evidence of malice, Plaintiff's allegations are not naked. Celotex, 477 U.S. at 324. Instead, the BWC evidence proves that Defendant did not shoot Plaintiff until he was almost parallel with Plaintiff's front driver's side window. (Doc. No. 36, Exhibit 4). Considering the evidence and drawing all reasonable inferences in favor of Plaintiff, this Court finds that there is at least a genuine dispute as to the material fact of whether Defendant's intent in shooting at Plaintiff was reckless or malicious.

Third and finally, even if Defendant had met his burden under Rule 56, he would only be entitled to summary judgment against Plaintiff's state tort law claims. The standard for a plaintiff's entitlement to punitive damages on federal claims (like Plaintiff's Section 1983 claim) is different from the North Carolina standard articulated in Hawkins. According to the Fourth Circuit in Cooper, "[punitive] damages are available ... for conduct that involves reckless or callous indifference to the federally protected rights of others." Cooper v. Dyke, 814 F.2d 941, 948 (4th Cir. 1987) (internal quotation mark omitted). Defendant declined to identify any federal authority regarding punitive damages, and thus failed to apply Cooper's "callous indifference" standard to the facts of Plaintiff's Section 1983 claim.

### b. Defendant Osorio and Defendant City

Plaintiff asserts five claims against Defendant Osorio and Defendant City: (1) a Fourth Amendment (unreasonable seizure) claim brought under Section 1983, (2) a malicious prosecution claim brought under North Carolina law; (3) a negligence *per se* claim under North Carolina tort law; (4) an obstruction of justice claim brought under North Carolina law; and (5) a false arrest claim brought under North Carolina tort law. Defendant Osorio and Defendant City argue they should prevail on summary judgment because (1) Plaintiff's claims against Defendant

26

Osorio are time-barred; (2) Plaintiff's arrest was supported by probable cause; and (3) Defendant

Osorio is entitled to qualified immunity and public official immunity. Regardless of whether

Plaintiff's claims are time-barred, Plaintiff's arrest was supported by probable cause and

Defendant Osorio is entitled to immunity.

### i. Plaintiff's Arrest was Supported by Probable Cause.

To succeed on a malicious prosecution claim, a plaintiff must show (1) the defendant

seized the plaintiff "pursuant to legal process that was not supported by probable cause," and (2)

"the criminal proceedings terminated in the plaintiff's favor." Durham v. Horner, 690 F.3d 183,

188–89 (4th Cir. 2012) (quoting Burrell v. Virginia, 395 F.2d 508, 514 (4th Cir. 2005)).

Similarly, a law enforcement officer is entitled to qualified immunity from an unlawful

seizure claim under Section 1983 "if there is 'arguable probable cause'…." Robbins v. City of

Des Moines, 984 F.3d 673, 680 (8th Cir. 2021) (quoting Borgman v. Kedley, 646 F.3d 518, 522

(8th Cir. 2011)). Here, Plaintiff's malicious prosecution and Section 1983 claims fail because

there was probable cause for Plaintiff's arrest.

A finding of probable cause is based on an objective standard considering the totality of

the circumstances. Moore v. Evans, 124 N.C. App. 35, 43 (1996) (stating an objective

reasonableness test for probable cause); Illinois v. Gates, 462 U.S. 213, 230–231 (1983)

(adopting a totality-of-the-circumstances approach to probable cause). Probable cause exists

where a reasonable police officer would be led to arrest, imprison, or prosecute another by the

facts and circumstances known to the officer at that time. Moore, 124 N.C. App. at 43.

Under the objective standard of reasonableness in the totality of the circumstances, this

Court finds that Defendant Osorio had probable cause to arrest Plaintiff on the charges of first-

degree trespass and assault with a deadly weapon on an officer. Both Ms. Cox and Mr. Green

identified a black Dodge Avenger. (Doc. No. 39-4 at 6–8; Doc. No. 39-5 at 7). This matched the vehicle description given in the call to CMPD reporting a vehicle piggybacking into a restricted parking area. (Doc. No. 39-7 at 2). Ms. Cox stated that two shots had been fired through the driver's side of the vehicle. Mr. Green, who drove with Plaintiff to the hospital, stated that he saw a bullet hole in the driver side window. (Doc. No. 39-4, at 9, 12); (Doc. No. 39-5 at 22). Ms. Cox also described the vehicle driving towards Officer Lor and him maneuvering out of harm's way. (Doc. No. 39-4 at 33–44). These statements and others made by Ms. Cox and Mr. Green matched Sgt. Linto's description of the events. Sgt. Linto, who is Officer Lor's supervisor, had spoken with Officer Lor shortly after the shooting. (Doc. No. 39-2 at 2). Finally, Detective Osorio was able to confirm the statements made by Sgt. Linto and Ms. Cox by viewing security footage and footage taken from Officer Lor's BWC.

Plaintiff states that there is a question of fact for a jury as to probable cause for his arrest because Defendant Lor never identified Plaintiff, never received the license plate information on the suspected vehicle, and only had reasonable suspicion of trespassing at the time he attempted to stop the vehicle. (Doc. No. 42 at 13–14). Considering the totality of the circumstances, these alleged deficiencies do not create a genuine issue of material fact sufficient to undermine Defendant Osorio's probable cause to arrest Plaintiff.

Plaintiff also points to the fact that the charges against him were dismissed, but this is irrelevant to the question of probable cause at the time of arrest. Although they may be informed by the same evidence, decisions to dismiss charges are made under prosecutorial discretion and are immaterial in answering whether a reasonable police officer would be led to arrest a plaintiff by the facts known to them at the time of arrest. See Torchinsky v. Siwinki, 942 F.2d 257, 264 (4th Cir. 1991) (quoting Krause v. Bennett, 887 F.2d 362, 371 (2d Cir. 1989)). Finally, Plaintiff

alleges without any factual basis that Detective Osorio sought the charges against Plaintiff to fabricate a justification for Officer Lor's use of force. (Doc. No. 42 at 17). This allegation lacks support in the record. In viewing the evidence and any inferences from the evidence in the light most favorable to the nonmoving party, this Court finds that Plaintiff's arrest was supported by probable cause. Consequently, Plaintiff's malicious prosecution and Section 1983 claims against Defendant Osorio and City of Charlotte must fail.

### ii. Defendant Osorio is Entitled to Qualified Immunity and Public Official Immunity.

Qualified immunity protects law enforcement officers who have violated another's constitutional right, but "in light of clearly established law, could reasonably believe that their actions were lawful." Knibbs, 30 F.4th at 214 (internal citations omitted). The two-prong test for qualified immunity considers (1) whether there was a violation of a constitutional right by the officer, and (2) whether that right was clearly established. Id. If both prongs are met—*i.e.*, the officer violated a clearly established constitutional right—then the court will not extend qualified immunity. A court need not approach the test in sequential order and can extend qualified immunity if either or both prongs of the test are not satisfied. Pearson v. Callahan, 555 U.S. 223, 236-237 (2009).

The right alleged to have been violated is the Fourth Amendment right against unreasonable search and seizure. (Doc. No. 42, at 18). As discussed, Defendant Osorio had probable cause to arrest Plaintiff for the charges of first-degree trespass and assault with a deadly weapon on an officer. This finding is further supported by the magistrate judge's approval of the arrest warrant. Because a law enforcement officer is entitled to qualified immunity from an unlawful seizure claim under Section 1983 "if there is 'arguable probable cause,'" and there was

probable cause here, Defendant Osorio is entitled to qualified immunity. <u>Robbins</u>, 984 F.3d at 680 (quoting <u>Borgman</u>, 646 F.3d at 522).

Under the doctrine of public official immunity in North Carolina, a public officer is protected from personal liability for executing their official or governmental duties unless the plaintiff alleges and proves the defendant's acts were malicious or corrupt. <u>Schlossberg v. Goins</u>, 141 N.C. App. 436, 445 (2000). There is a presumption in North Carolina that public officials will execute their duties in good faith and in accordance with the law. <u>Strickland v. Hedrick</u>, 194 N.C. App. 1, 10 (2008). There is a "heavy burden" on Plaintiff to overcome this presumption with "competent and substantial evidence." <u>Id.</u> This Court is satisfied that there was probable cause for Plaintiff's arrest, and Plaintiff has failed to show malice or corruption in Defendant Osorio's execution of his official duties in arresting Plaintiff or seeking a warrant against him. Accordingly, this Court finds that Defendant Osorio is entitled to public official immunity.

### iii. Defendant Osorio is not Liable for Obstruction of Justice.

Similarly Defendant Osorio is not liable for obstruction of justice. Obstruction of justice occurs when there is a pending judicial proceeding, the defendant knew of this pending proceeding, and the defendant acted "with the intent to influence, obstruct, or impede that proceeding in its due administration of justice." <u>United States v. Blair</u>, 661 F.3d 755, 766 (4th Cir. 2011) (quoting <u>United States v. Grubb</u>, 11 F.3d 426, 437 (4th Cir. 1993)). Here, Plaintiff has failed to present sufficient evidence to support a claim for obstruction of justice. The actions of a law enforcement official in the normal course of a criminal investigation do not give rise to obstruction of justice. <u>See</u> <u>Evans v. Chalmers</u>, 703 F.3d 636, 658 (4th Cir. 2012); <u>See also</u> <u>Houck v. Howell</u>, No. 5:14-CV-00187-RLV-DCK, 2016 WL 3625550, at *2–3 (W.D.N.C. July 6, 2016). While Plaintiff asserts that Defendant Osorio made false statements in obtaining a

warrant, Plaintiff offers no facts to support this assertion. To the contrary, an abundance of evidence suggests that Defendant Osorio properly investigated charges against Plaintiff.

### iv. Defendant City of Charlotte is not Liable for False Arrest.

Lastly, Defendant City is not liable for false arrest of Plaintiff. False arrest is the illegal restraint of one's person against his will. Probable cause is an absolute bar to a claim for false arrest. Burton v. City of Durham, 118 N.C. App. 676, 682 (1995) (citing Friedman v. Village of Skokie, 763 F.2d 236, 239 (7th Cir. 1985)). Here, there was probable cause for Plaintiff's arrest. The fact that this arrest was made based upon information given by Defendant Lor, or the arrest occurred before a warrant was issued, does not vitiate a proper arrest based upon proper cause. In re Gardner, 39 N.C. App. 567, 569–70 (1979) ("Probable cause may be based upon information given to the officer by another, the source of such information being reasonably reliable."); State v. Brooks, 337 N.C. 132, 145 (1994) (establishing that an officer may make a warrantless arrest for a felony committed outside of their presence, if probable cause exists) (citing N.C. Gen. Stat. § 15A-401(b)(1)).

### c. Negligence *Per Se* Claims

Because Officer Osorio is entitled to qualified and public official immunity, Plaintiff's negligence claim against Defendant Osorio must fail. Public official immunity "shields public officials from personal liability for claims arising from discretionary acts or acts constituting mere negligence[.]" Bartley, 381 N.C. at 294.

With respect to Defendant City of Charlotte, Plaintiff's negligence *per se* claim essentially operates as a claim against Defendant Lor in his official capacity. "[S]uing a public officer in her official capacity 'is simply another way of suing the public entity of which the officer is an agent.'" Franklin, 64 F.4th at 538 n.3 (quoting Thompson v. Town of Dallas, 142

N.C. App. 651 (2001)). Defendant City of Charlotte has waived governmental immunity to tort claims. <u>See</u> N.C. Gen. Stat. § 160A-485.5. Like Defendant Lor, Defendant City of Charlotte confuses the issue and maintains that Plaintiff's negligence *per se* claim should fail because "N.C.G.S. §15A-401, does not allow for a private right of action." (Doc. No. 39). Defendant City of Charlotte, as movant for summary judgment, has failed to demonstrate that they are entitled to judgment against Plaintiff's negligence *per se* claim as a matter of law. Consequently, Defendant City of Charlotte's summary judgment motion against Plaintiff's negligence *per se* claim will be denied on the same grounds as Defendant Lor's summary judgment motion.

## IV.    CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

> The Motion for Summary Judgment filed by Defendant Lor, (Doc. No. 36), is **DENIED**.
>
> The Motion for Summary Judgment filed by Defendants Osorio and City of Charlotte, (Doc. No. 39), is **GRANTED** with respect to Defendant Osorio, and **GRANTED** in part and **DENIED** in part with respect to the City of Charlotte. The claims against Defendant Osorio are dismissed with prejudice.

Signed: September 28, 2023

Max O. Cogburn Jr.
United States District Judge

32